TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00151-CR







Paul Miles Sullivan, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 47,303, HONORABLE JOE CARROLL, JUDGE PRESIDING







 After finding appellant guilty of intoxication manslaughter, the jury assessed
punishment at confinement for five years. See Tex. Penal Code Ann. § 49.08 (West 1994). 
Appellant asserts four points of error, contending that error occurred in the trial court because: 
(1) the trial court refused to grant appellant's motion for directed verdict because there was no
evidence that appellant had lost the normal use of his mental and physical facilities due to the
introduction of alcohol into his body; (2) the evidence was legally insufficient to support the
conviction; (3) the evidence was factually insufficient to support the conviction; and (4) appellant's
medical records were searched in violation of article I, § 9 of the Texas Constitution. We will
overrule appellant's points of error and affirm the judgment of the trial court.

 About 6:40 p.m. on December 21, 1996, a three-vehicle collision on Highway 371
in North Belton resulted in the death of Laura Ellison. Due to appellant's challenge of both the
legal and factual sufficiency of the evidence, our review will include evidence that each party
urges is favorable to its position.

 Belton police officer Patrick Mullins, the first officer dispatched to the scene,
testified as to the results of his investigation. The three vehicles were positioned in the southbound
lane with the right of appellant's van in the northbound lane. Mullins found a bag containing a
six-pack of empty beer bottles and a "three-fourth's empty bottle of tequila" on the floor of
appellant's van. Appellant's van had neither headlights nor parking lights on; however, Mullins
observed that appellant's light switch was in a "park position." The Mazda automobile in which
the deceased was a passenger left skid marks but none were shown to have been made by
appellant's van. Department of Public Safety ("DPS") trooper Thomas Peoples's investigation
showed that appellant's vehicle was the heavier and the position of the two vehicles indicated that
the Mazda's speed was greater than that of the van. Peoples did not receive any report from other
officers relative to appellant's intoxication.

 The third vehicle involved in the accident was occupied by James and Deborah
Larue. Their testimony reflected that they were driving in a southerly direction when they
observed a car that "looked like it had just hit a wall." It was not until the car spun around that
they were able to observe another vehicle. The Larue vehicle was unable to stop before colliding
with the car. At this point, the Larues observed a van that had collided with the car. They did
not see any lights on the van before or after the collision. Deborah Larue testified that the van was
partially over the center stripe.

 Mark Goddard testified that he was driving into Belton shortly before the collision
when he met a vehicle "mostly over in my lane--I saw no lights at all." When Goddard returned
a short time later, the road was blocked as the result of an accident.

 Santos Garza and his wife stopped at the scene of the wreck. Garza talked to the
man in the van and did not observe any signs of intoxication. Teri Galloway and Donna Perlitz,
paramedics at Scott and White Hospital in Temple, were dispatched to the scene. They found
appellant virtually immobile since his legs were pinned in the van. Despite appellant's denial of
having had any alcohol to drink, they smelled alcohol on his breath. They did not observe any
alcohol impairment of appellant. Appellant was given oxygen and an "IV of normal saline" at the
scene. Upon arrival at Scott and White, appellant was given one unit of blood. Ben Rodriguez,
a medical technologist at the hospital, ran a test on appellant's blood at 9:20 p.m. The reading
was equal to 0.16 blood-alcohol concentration. Frank Santos, a medical lab technician at the
hospital, ran an alcohol analysis on appellant's blood after he came on duty at 11:00 p.m. Santos's
test result was equal to 0.096 blood-alcohol concentration. Charles Mott, a chemist with DPS,
arrived at the foregoing test results by converting the findings of Santos and Rodriguez measured
in milligrams per deciliter to grams per 100 milliliters. (1) Rodriguez testified that the hospital's
blood analyzer is regularly checked to determine whether results are within acceptable ranges. 
Under cross-examination, Rodriguez stated that it was impossible to conclude that there would not
be a deviation of ten to fifteen percent in the results even though a previous check on the same day
had shown that the machines were accurate. Appellant urges that the system used by the hospital
fails to adjust for hemoglobin, triglycerides, or cholesterol, all of which are present in human
beings and interfere with the machines' analysis. After factoring in all of the foregoing possible
deviations, appellant concludes that the adjusted figures would show 0.13 grams per 100 milliliters
and 0.076 grams per 100 milliliters.

 Mott testified that people "become impaired as far as driving when they reach a
level of .08." With respect to persons who have received a saline solution, Mott stated "You
would expect that to dilute the blood-alcohol concentration in their blood." In terms of grams per
100 milliliters, Mott opined that the decline of alcohol in a person's body is .02 to .03 per hour.

 Under the indictment and the trial court's charge, the jury was authorized to find
appellant guilty if he had an alcohol concentration in his blood of 0.1 grams or more of alcohol
per 100 milliliters of blood or if he did not have the normal use of his mental and physical
facilities by the introduction of alcohol in his body.

 In reviewing the legal sufficiency of the evidence, we must determine whether,
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jakson v. Virginia,
443 U.S. 307, 319 (1979). Under the Jackson standard, the reviewing court is not to position
itself as a thirteenth juror in assessing the evidence, nor is it our place to second guess the
determination made by the trier of fact. See Collins v. State, 800 S.W.2d 267, 269 (Tex.
App.--Houston [14th Dist.] 1990, no pet.). The trier of fact (jury in this cause) is in a better
place than an appellate court to weigh, accept, or reject all or any portion of any witness's
testimony. It is the duty of this Court to determine if the explicit and implicit findings by the trier
of fact are rational under legal standards to support the conviction. See Adelman v. State, 828
S.W.2d 418, 422 (Tex. Crim. App. 1992).

 Viewing the evidence in the light most favorable to the jury's verdict, the evidence
shows that appellant drove his vehicle at least partially on the wrong side of the road on a dark
night without lights. Appellant had the smell of alcohol on his breath and alcoholic beverage
containers were found in his vehicle. It was logical for the jury to infer that appellant had not
applied his brakes before the collision since it was shown that his vehicle did not lay down any
skid marks. Under DPS's conversion of hospital blood-test results, appellant's blood alcohol was
shown to have ranged at different time intervals from 0.16 to 0.096.

 Viewing the evidence in the light most favorable to the verdict, we hold that any
rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Accordingly, appellant's first and second points of error are overruled.

 On appellate review, we may consider factual sufficiency as well as legal
sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet ref'd untimely
filed); see also Clewis, 922 S.W.2d 126 (adopting Stone test). In Stone, this Court set the
following standard for factual review:


[T]he court reviews all the evidence without the prism of "in the light most
favorable to the prosecution." Because the court is not bound to view the evidence
in the light favorable to the prosecution, it may consider the testimony of defense
witnesses and the existence of alternative hypotheses. The court should set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.


Stone, 823 S.W.2d at 381 (citations omitted).

 Our analysis of appellant's factual challenge to the sufficiency of the evidence
includes the testimony of witnesses who did not observe any impairment in appellant at the scene
as well as evidence of possible deviations in blood-alcohol test results. After reviewing all of the
evidence and the arguments and the existence of alternative hypotheses, we conclude that the
verdict is not so contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust. Appellant's third point of error is overruled.

 In his fourth point of error, appellant contends that the trial court erred in refusing
to suppress evidence derived from a search and seizure of appellant's medical records. It appears
that officer Mullins's and another officer's meeting with the district attorney's office resulted in
a determination that appellant's medical records at Scott and White were needed for the
investigation. Adella Gomez, legal assistant to the district attorney, testified that she signed the
district attorney's name with her initials beside it to a grand jury subpoena for appellant's medical
records. Gomez stated that the district attorney had instructed her to sign his name when a grand
jury subpoena was needed. Appellant directs our attention to the fact that the subpoena was not
issued by a court, that no application was made to the district clerk's office for a subpoena duces
tecum for appellant's medical records, and that no charges were pending against appellant at the
time the subpoena was issued.

 Appellant elicited testimony from Dr. Gregory Hobbs, Chairman of the Department
of Emergency Medicine at Scott and White, that he viewed patient-physician communications as 
private, and that both physician and patient expected their communications to be private. Dr.
Hobbs testified that he referred subpoenas for medical records to the hospital's legal department.

 While appellant did not testify at trial or at the pre-trial motion to suppress the
medical records, appellant urges that he had a reasonable expectation of privacy in his medical
records as a result of Dr. Hobbs's testimony. Based on this expectation of privacy, appellant
asserts that the prosecutor's exploration of appellant's medical records constituted a search within
the meaning of the Texas Constitution article I, section 9. In addition, appellant argues that the
fruits of the illegal search, the results of the blood test, should have been suppressed. See Tex.
Code Crim. Proc. Ann. art. 38.23 (West Supp. 1999).

 In Corpus v. State, 931 S.W.2d 30 (Tex. App.--Austin 1996, pet. dism'd), the
defendant was taken to a hospital emergency room where blood-alcohol tests were made for
medical purposes. The defendant urged that the trial court erred in denying his motion to suppress 
evidence of the results of the hospital's blood-alcohol test under the Fourth Amendment to the
United States Constitution, article I, sections 9 and 10 of the Texas Constitution, and article 38.23
of the Code of Criminal Procedure. This Court found that the statute providing for the
confidentiality of medical records was repealed upon the adoption of Texas Rules of Criminal 
Evidence 509 which abolished the doctor-patient privilege in criminal proceedings. Id. 32. 
Corpus held that since the defendant could not invoke a physician-patient privilege to prevent
testimony about the blood- test results, he had no reasonable expectation of privacy in the results
on which to base his motion to suppress. Id. 32-33.

 In State v. Hardy, 963 S.W.2d 516 (Tex. Crim. App. 1997), the defendant was
hospitalized following an accident. As in the instant cause, the hospital drew blood for alcohol
or drug testing to be utilized in the defendant's treatment. Like the instant cause, an officer
obtained a grand jury subpoena for the hospital's alcohol or drug information prior to the
defendant being charged with an offense.

 In Hardy, the Court of Criminal Appeals did an extensive review of the legislative
history granting that court rulemaking power. The court stated: "In the repealer section of the
statute relating to evidence, § 5.08 [of the Medical Practice Act] was specifically mentioned as one
of the statutes designated for repeal. To the extent that Rule 509 may be interpreted as modifying
substantive rights created by the Medical Practice Act, one can logically infer from the committee
report, the committee's proposed draft of the rules, and the statute that the Legislature intended
to abrogate any privilege contained in § 5.08." Id. 521. With respect to the defendant's claim
of denial of Fourth Amendment rights, Hardy noted the distinction when the drawing of blood is
instigated by the government. A subsequent analysis of the blood by the government violates a
socially recognized expectation of privacy. Id. 523. Hardy held that "[w]hatever interests society
may have in safeguarding the privacy of medical records, they are not sufficiently strong to require
protection of blood-alcohol test results from tests taken by hospital personnel solely for medical
purposes after a traffic accident." Id. 527.

 Appellant contends that Hardy is not applicable because the subpoena in the instant
cause did not issue from a grand jury. A similar complaint was raised by the defendant in
Dickerson v. State, 965 S.W.2d 30, 31 (Tex. App.--Houston [1st Dist.] 1998, pet. dismissed as
improvidently granted), where the officer obtained a subpoena from the district attorney's office
to obtain records from the hospital where the defendant was taken following an accident. 
Dickerson held that in the absence of constitutional or statutory expectation of privacy, the
defendant had no standing to complain of defects in the grand jury process. Id. Appellant's fourth
point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Jones, Patterson and Davis*

Affirmed

Filed: April 29, 1999

Do Not Publish











* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The record reflects that the hospital's blood analyzer, unlike the one operated by DPS,
was designed to assist doctors in treating patients.



made for
medical purposes. The defendant urged that the trial court erred in denying his motion to suppress 
evidence of the results of the hospital's blood-alcohol test under the Fourth Amendment to the
United States Constitution, article I, sections 9 and 10 of the Texas Constitution, and article 38.23
of the Code of Criminal Procedure. This Court found that the statute providing for the
confidentiality of medical records was repealed upon the adoption of Texas Rules of Criminal 
Evidence 509 which abolished the doctor-patient privilege in criminal proceedings. Id. 32. 
Corpus held that since the defendant could not invoke a physician-patient privilege to prevent
testimony about the blood- test results, he had no reasonable expectation of privacy in the results
on which to base his motion to suppress. Id. 32-33.

 In State v. Hardy, 963 S.W.2d 516 (Tex. Crim. App. 1997), the defendant was
hospitalized following an accident. As in the instant cause, the hospital drew blood for alcohol
or drug testing to be utilized in the defendant's treatment