**Mirella L. ADELMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–0117–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 21, 1987.

Ronald N. Haynes, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., William J. Delmore, III, Gladys A. Guero, Harris County Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

COHEN, Justice.

Appellant was convicted of falsely imprisoning her 25–year-old son at a time when he was mentally incompetent and she served as his court-appointed guardian. She waived a jury, pleaded not guilty, and represented herself at trial with assistance from a lawyer. The trial court found her guilty and assessed punishment at confinement for 180 days, probated.

Appellant, now represented by counsel, challenges the sufficiency of the evidence.

The information alleged that appellant: On or about October 10, 1985 did ... unlawfully, intentionally, and knowingly restrain Daniel Adelman, hereafter styled the complainant, by force, intimidation or deception by using handcuffs and a foot shackle to prevent the liberation of the complainant.

The information alleged the class B misdemeanor offense condemned in Tex.Penal Code Ann. sec. 20.02 (Vernon 1974). Section 20.02 provides:

A person commits an offense if he intentionally or knowingly restrains another person.

Section 20.01 of the Penal Code provides:

In this chapter: (1) "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with his liberty, ... by confining him.

Restraint is "without consent" if it is accomplished by: (A) force, intimidation, or deception; ....

The first point of error asserts that the trial court erred in finding appellant guilty because her conduct was justified under Tex.Penal Code Ann. sec. 9.63 (Vernon 1974). Section 9.63 provides:

The use of force ... against a mental incompetent is justified: (1) if the actor is the incompetent's guardian or someone similarly responsible for the general care and supervision of the incompetent; and (2) when and to the degree the actor reasonably believes the force is necessary: (A) to safeguard and promote the incompetent's welfare; ...

The use of justified force is a defense to prosecution. Tex.Penal Code Ann. sec. 9.02 (Vernon 1974). If the evidence raises an issue of justification concerning a guardian's use of force, a reasonable doubt on the issue requires that the guardian be acquitted. Tex.Penal Code Ann. sec. 2.03(d) (Vernon 1974). In other words, the State must prove beyond a reasonable doubt that the guardian had no reasonable belief that the force used was necessary for the incompetent's welfare.

Moreover, Tex.Penal Code Ann. sec. 9.03 (Vernon 1974) provides that confinement is justified when "force" is justified under sec. 9.63. Section 9.03 provides:

Confinement is justified when force is justified by this chapter if the actor takes reasonable measures to terminate the confinement as soon as he knows he safely can unless the person confined has been arrested for an offense.

Finally, whenever the use of force is justified, the threat of force is also justified. Tex.Penal Code Ann. sec. 9.04 (Vernon 1974).

The undisputed evidence showed that Daniel Adelman was incompetent and that the appellant was his guardian and was responsible for his general care and supervision. Thus, appellant's confinement of, and use or threat of force against, Daniel was justified when and to the degree she

reasonably believed that it was necessary for his welfare.

Section 9.63 does not justify a guardian's use of force based solely upon a subjective belief in its necessity. Rather, force, threats of force, and confinement are justified only when the guardian "reasonably believes" that they are necessary to the incompetent's welfare. A "reasonable belief" is a "belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex.Penal Code Ann. sec. 1.07(31) (Vernon 1974).

In resolving this challenge to the sufficiency of the evidence, we are guided by the analogous standard set out in *Van Guilder v. State*, 709 S.W.2d 178 (Tex. Crim.App.1985). We view the evidence in the light most favorable to the verdict in order to decide whether any rational fact finder could have found, beyond a reasonable doubt, that appellant did not reasonably believe that the use of handcuffs and a foot shackle was necessary on October 10, 1985, to safeguard and promote her incompetent son's welfare. That is the only issue before us. We are not allowed by law to decide whether appellant should have been her son's guardian, whether she did or can provide him a suitable home, or whether she has or may abuse him at any other time or in any other way. These issues are within the exclusive jurisdiction of the probate court, which has the sole power to appoint and remove guardians. Tex.Prob.Code Ann. sec. 5(c) (Vernon Supp. 1987).

The record reveals that appellant took "reasonable measures to terminate the confinement" as soon as she knew that she safely could. Appellant testified, without impeachment or contradiction, that her son was not placed in his room for the night of October 10, 1985, with handcuffs and foot shackles on; that he did not sleep that night so restrained; and that after he returned to his room for the night, she gave him the key to remove the restraints. Appellant thus met the requirement of Penal Code sec. 9.03 that justified confinement be terminated as soon as safely possible.

We must now decide whether a rational fact finder could have found, beyond a reasonable doubt, that appellant did not reasonably believe that the hand and foot restraints were necessary to her son's welfare.

Appellant's son, Daniel, was 25 years old on October 10, 1985. The undisputed psychiatric diagnoses in the record reflect that he suffered from paranoid schizophrenia or schizophrenia, chronic undifferentiated type. He was adjudicated incompetent on January 19, 1982. Daniel was committed several times to the Austin State Hospital, once for a year. Dr. Boulos of the Austin State Hospital testified that Daniel can be dangerous; that he had once tried to choke another patient; and that Daniel was on homicide precaution, escape precaution, and suicide precaution at various times. Dr. Boulos testified that he was frightened of Daniel and that Daniel once tried to hit him, necessitating the assistance of two orderlies to restrain Daniel. Al Baker, a social worker at the Harris County Psychiatric Hospital, testified that Daniel often demonstrated violent behavior. Bruce Sante, an orderly at the Harris County Psychiatric Hospital, testified that he broke his hand attempting to restrain Daniel, despite the assistance of three other men. Dr. Abdula testified that she was attacked by Daniel and ordered him restrained and secluded. Appellant testified that Daniel tore up the walls of his room on 15 to 20 occasions; that he broke his toilet so that it was incapable of being flushed; and that he threw a brick through a window and threw his shackles at appellant.

Appellant was specifically charged with illegally restraining Daniel by "force, intimidation or deception by using handcuffs and foot shackle" on October 10, 1985. On that day, State's witness Roger Berlin met appellant at the Lipstick Lounge, where she worked as a topless dancer. Berlin testified that he was an "undegreed psychologist" or "consumer psychologist," and was in Houston to organize a motivational seminar. Berlin informed appellant that he was a "consumer psychologist," and appellant told Berlin that her son was schizophrenic and she kept him "in a cage." Ber-

lin asked to see her son, but appellant refused. Berlin left the bar and waited in his car, intending to follow appellant to her home. However, appellant was unable to start her car and accepted Berlin's offer of a ride home.

When they arrived, Berlin was introduced to Daniel and was allowed to enter Daniel's room. The room resembled a jail cell; the door was constructed of heavy iron bars, and the window had bars covered with a metal grating. Berlin initially spent less than 15 seconds in the room. Berlin invited Daniel out of his room. Daniel entered the kitchen, poured a glass of orange juice, and sat smoking a cigarette. Appellant was angered by Daniel leaving his room, and she and Jack Kenna, Daniel's babysitter, repeatedly demanded that Daniel return to his room. Daniel became upset and ran into appellant's bedroom.

Berlin persuaded appellant to let him talk with Daniel alone. Appellant agreed, although she stood behind the door listening to their conversation. Berlin talked to Daniel for 15 minutes. During the conversation, Daniel told him that, as a child, he had been tied to a bed, whipped and raped by a woman who looked like appellant, and that he believed that woman may have been appellant. When Berlin began to question Daniel further about this, appellant interrupted and ordered him to leave. At this point, Berlin testified, bedlam broke out. Berlin testified that Daniel "was terrified, he was trembling, almost out of control." Appellant asked Berlin to leave. Daniel followed Berlin and appellant to the kitchen. Berlin testified that—

> The mother and Jack wanted me to leave, and Daniel would not leave the kitchen. I think there was a fear that if I opened the door that he would bolt out. That's speculative, because they didn't want to open the door as long as we were all yelling at each other in the room.

Daniel next ran from the kitchen into appellant's bedroom and made brief telephone calls to two hospitals. After appellant got the phone away from him, Daniel said:

> I want to leave now, I want to go back to the hospital. They can make me better—

just let me go—I don't want to be here anymore. I don't want to live with you anymore. I want to go back to the hospital.

Berlin testified that appellant then told Daniel that, "if you want to be raped, that's fine, I'll call them right now."

Daniel became hysterical, and then became completely docile. Appellant testified that she was afraid that Daniel would cause harm to himself or others, or destroy the room. She took out the hand and leg cuffs that she kept in her home for Daniel. Berlin testified that appellant attached the handcuffs to Daniel's wrist, then she attached the leg shackle to his leg. Appellant then attached the leg shackle to the handcuffs, "which left him on his back with his right leg curled up toward his head, and his hands and legs shackled together." After the cuffs were placed on Daniel, Berlin left and went to a local television station to report what he had seen.

The undisputed evidence proved that appellant restrained Daniel, a dangerous, chronic schizophrenic, for a period of minutes while he was extremely agitated following his encounter with Berlin. But for appellant's acts, Daniel could have fled into the night alone, or in the company of Berlin, a near total stranger. Appellant testified that she feared that Daniel would flee or become violent unless restrained.

The reasonableness of Daniel's restraint must be seen in light of a violent, lengthy, well-documented history of severe mental illness. The events of October 10, 1985, were no more than the snapshot of a moment, measured against a lifetime of similar government-ordered, medically sanctioned restraints imposed in society's continuing but futile attempts to control Daniel Adelman's behavior.

By enacting Penal Code secs. 9.63, 9.02, 9.03, and 2.03, our legislature granted considerable leeway to a guardian willing to pick up the burden of caring for an incompetent. Texas courts have followed a lenient standard toward guardians for more than a hundred years. *Stanfield v. State*, 43 Tex. 167 (1875).

We hold that the State failed to prove, beyond a reasonable doubt, that appellant used force beyond what she reasonably believed was necessary to safeguard and promote the welfare of her incompetent son. The first point of error is sustained.[1]

The judgment is reformed to reflect an acquittal. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

---

1. We have considered the remaining points of error and found them without merit for reasons argued in the State's appellate brief.