Mirella **ADELMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 747–87.

Court of Criminal Appeals of Texas, En Banc.

March 4, 1992.

---

4. No. 88–CI–14572 was styled *Leno Garcia, et al.* *v. Robert W. Beyer, et al.*

man, her 25–year–old, mentally ill son. See V.T.C.A., Penal Code, Section 20.02. She waived a jury, pleaded not guilty, and with the aid of an attorney represented herself at trial. After hearing evidence, the trial court found appellant guilty and assessed a sentence of 180 days' confinement. The judge probated the sentence.

Appellant challenged the sufficiency of evidence in the First Court of Appeals. She asserted that her conviction should be set aside, claiming that her conduct was justified under V.T.C.A., Penal Code, Section 9.63.[1] The Court of Appeals agreed with appellant, found the evidence to be insufficient, and reformed the judgment to reflect an acquittal. *Adelman v. State*, 731 S.W.2d 143 (Tex.App.–Houston [1st Dist.] 1987).

The State petitioned this Court for discretionary review claiming that the Court of Appeals did not review the evidence in the light most favorable to the verdict when it found that the evidence was insufficient. The State asserted that "the Court of Appeals erred in basing its decision upon the evidence which supported the appellant's defense, rather than upon that which supported the trial court's finding of guilt. It effectively substituted its opinion of the weight and credibility of the evidence for that of the trial court." We granted the State's petition to review the Court of Appeals' holding and will now reverse.

Appellant was charged with illegally restraining Daniel by "force, intimidation or deception by using handcuffs and foot shackle." On the date of the alleged offense, Roger Berlin, a "consumer psychologist," met appellant at a lounge where she worked as a dancer. Appellant told Berlin that her son was schizophrenic and that she kept him in "a cage." Berlin asked to see the son. Appellant at first refused but later agreed.

When the two arrived at appellant's house, Berlin was allowed to enter the

Ronald N. Hayes, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., William J. Delmore, III and Gladys Aguero, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant, Mirella Adelman, was indicted for the false imprisonment of Daniel Adel-

1. That section, in relevant part, provides that the use of force against a mental incompetent is justified "if the actor is the incompetent's guardian" and "when and to the degree the actor reasonably believes the force is necessary ... to safeguard and promote the incompetent's welfare...."

boy's room. Berlin described the room as a "horror story." The door to the room was constructed of heavy iron bars "like those found in a jail cell" and the window had bars covered with a metal grating. Other than toilet facilities, a mattress was the only furniture in the room. Berlin testified that the bedroom stank of urine and that "sperm stains" covered the rug.[2]

Berlin saw that Daniel was wearing only a pair of "dirty undershorts" and he invited him out of the room. Once in the kitchen, Daniel poured himself a glass of orange juice, sat down and began to smoke a cigarette. Appellant became upset at Daniel for leaving his room, she demanded that he return. Daniel, however, ran into appellant's bedroom.

Berlin persuaded appellant to allow him to talk alone with Daniel. During this conversation Daniel told him that as a child he had been tied to a bed, whipped and raped by a woman who looked like appellant. When Berlin started to question Daniel about this "fantasy" or "illusion," appellant interrupted and ordered Berlin to leave, accusing him of being a "plant" from the insurance company.

Daniel pleaded with Berlin to take him away. Appellant told Daniel, "No, you're going to the cage." During the ensuing events Daniel made brief phone calls to two hospitals, seeking admittance. After appellant pulled the phone away, Daniel told her, "I want to leave now, I want to go back to the hospital. They can make me better, just let me go." Appellant threatened the boy by telling him, "if you want to be raped, that's fine, I'll call them right now ... They will come and take you down to the cell and you will be raped...." Daniel then displayed "momentary hysteria," but soon calmed down. A significant portion of Berlin's testimony is as follows:

"Q. [By State's Attorney]: Mr. Berlin, on October the 10th of 1985, when you went to the home of Mirella Adelman and Daniel Adelman, did in your pres-

ence, while you were in that home did Daniel Adelman destroy any property?

"A. No.

"Q. Did Daniel Adelman hurt himself, in any way?

"A. He was amazingly under control considering the circumstances.

"Q. And when I say hurt himself any way, did he take a gun and hold it to his head, did he take a knife and ... slash himself with it[,] did he take furniture and throw it on himself, did he hit his head up against a wall, did he throw his fist through a wall, did he go to the floor and start kicking up and down any means of hurting one's self?

"A. No. There was no aggression on that matter.

"Q. Did he hurt anyone else in the room, yourself, his mother, or the person known as Jack?

"A. He hurt nobody.

"Q. And what I mean by that is taking objects to them, throwing furniture at them, hitting them physically with any part of his body?

"A. He did not approach, he attempted to defend himself against the aggression of the other two in the room....

"Q. And when the handcuffs and foot shackles were placed on him, he was in the bed?

"A. Yes, he was in the bed.... He was flat on his back."

Berlin testified that Daniel laid trembling on appellant's bed when appellant produced a set of metal handcuffs and a pair of leg irons which were connected by a chain approximately one foot in length. Upon seeing the shackles, Daniel begged appellant not to confine him. Appellant, however, cuffed both of the boy's hands and shackled one of his legs. She then pulled the shackled leg up towards Daniel's stomach and chained it to the handcuffs. Because of the short length of the chain, Daniel was left curled in a ball-like position on the bed.

Appellant's friend, Jack Keena, watched over Daniel while she worked. Keena was

---

**2.** Investigators testified that on the day they executed a search warrant the room smelled of excrement, the toilet had not been flushed in some time and the unused bathtub contained cigarette butts.

there the night of the offense and witnessed the events. He testified for appellant but he too related that Daniel was not agitated prior to being restrained. And even appellant admitted in her testimony that on the date of the alleged offense Daniel was not violent or destructive before he was shackled.

Appellant challenged the trial court's verdict, claiming in the Court of Appeals that she believed it necessary to keep Daniel at home and that the boy had agreed to the system of shackling so as to avoid damage to the house. She asserted that even though Daniel was calm before he had been shackled on the night of the offense she wanted to guard against any sudden outbursts that might occur. Contrary to the trial court's finding, the Court of Appeals agreed with appellant and determined that her actions were justified.

In its opinion, the Court of Appeals, referring to Section 2.03 of the Penal Code determined that "[i]f the evidence raises an issue of justification concerning a guardians's use of force, a reasonable doubt on the issue requires that the guardian be acquitted." *Adelman v. State*, 731 S.W.2d 143, 144 (Tex.App.—Houston [1st Dist.]

1987). From this premise, the Court of Appeals concluded that "the State must prove beyond a reasonable doubt that the guardian had no reasonable belief that the force used was necessary for the incompetent's welfare." *Id.* This is incorrect.

■ Having contested the sufficiency of the evidence on appeal, the Court of Appeals should have determined "whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910 (Tex.Cr.App. 1991).[3] The trier of fact—not the appellate court—was called upon to decide if appellant's actions were justified under the Penal Code. See *Saxton*, 804 S.W.2d at 913–914. And the trier of fact—not the appellate court—was free to accept or reject all or any portion of any witness's testimony. See *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex.Cr.App.1983); *Silva v. State*, 546 S.W.2d 618 (Tex.Cr.App.1977); *Sloan v. State*, 515 S.W.2d 913, 918 (Tex.Cr.App. 1974).[4]

---

**3.** In the case before us, the Court of Appeals utilized an incorrect standard of review to examine the defensive evidence presented at trial. In *Saxton v. State*, 804 S.W.2d 910 (Tex.Cr.App. 1991), this Court faced the same issue. There the defendant claimed that his conduct (the killing of an individual with a handgun) was done in self-defense. The Fourteenth Court of Appeals agreed and like the case before us, the lower appellate court determined that the State "must produce evidence which establishes beyond a reasonable doubt" that the defendant's acts were not justified. The Court of Appeals concluded that because the State did not produce such evidence then the evidence was insufficient to prove murder. We rejected the Court of Appeals' standard of review and determined that:

"Thus, we conclude the Court of Appeals erred in relying on § 2.03(d) ... and thereby creating a burden of production for the State in cases where defensive evidence is presented when addressing the sufficiency of the evidence to support a conviction. In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether

after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 910, citing V.T.C.A., Penal Code, Section 2.03(d); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989).

**4.** The Court of Appeals, however, seemingly reevaluated the evidence in the light most favorable to appellant's defense and concluded that:

"The undisputed evidence proved that appellant restrained Daniel, a dangerous, chronic schizophrenic for a period of minutes while he was extremely agitated following his encounter with Berlin. But for appellant's acts, Daniel could have fled into the night alone, or in the company of Berlin, a near total stranger. Appellant testified that she feared that Daniel would flee or become violent unless restrained.

"The reasonableness of Daniel's restraint must be seen in light of the violent, lengthy, well-documented history of severe mental illness. The events of October 10, 1985, were no more

In the case before us, the trier of fact (the trial court judge), by finding appellant guilty, implicitly rejected appellant's defense. See *Saxton*, 804 S.W.2d at 914; *Jenkins*, 740 S.W.2d at 438. After conviction, it becomes the Court of Appeals' duty to determine if the explicit and implicit findings by the trier of fact are rational under legal standards to support that conviction. The Court of Appeals does this by evaluating the evidence in the light most favorable to the trier of fact's determinations. When viewed in the light most favorable to the implicit rejection of appellant's defense, we find that there is sufficient evidence in the case before us.

Section 9.63 of the Penal Code provides that:

"The use of force, but not deadly force, against a mental incompetent is justified: (1) if the actor is the incompetent's guardian or someone similarly responsible for the general care and supervision of the incompetent; and (2) when and to the degree the actor reasonably believes the force is necessary: (A) to safeguard and promote the incompetent's welfare; or (B) if the incompetent is in an institution for his care and custody, to maintain discipline in the institution."

Section 1.07(a)(31) of the Penal Code defines the term "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." The record shows that at the time of his confinement Daniel was not violent. Even appellant and one of her own witnesses testified that Daniel was calm.[5] State's witness Berlin testified that the complainant was "docile." In short, there was no evidence that the complainant was in an "extremely agitated" state at the time of his confinement. Because the complainant was manageable before he was chained, the trier of fact was free to accept the position that no ordinary or prudent person would find it necessary to chain a mentally retarded person hand and foot when that person was lying quietly on a bed, exhibiting no violent or destructive tendencies.

Furthermore, the Court of Appeals entirely failed to address the State's other position that the *manner* of the complainant's restraint was unreasonable. The Court suggested that the complainant's leg irons and chains were "similar" to his previous "government-ordered, medically sanctioned restraints." There was evidence, however, that metal restraints are not acceptable under current standards of decency in the treatment of the mentally ill and the way in which appellant restrained the complainant—"like that of a dog"—certainly would support the trier of fact's rejection of appellant's defense as being unreasonable.

Finally, in order for confinement to be justified under the Penal Code the actor must take "reasonable measures to terminate the confinement as soon as he knows he safely can unless the person confined has been arrested for an offense." V.T.C.A., Penal Code, Section 9.03. The Court of Appeals believed that because "appellant testified, without impeachment or contradiction, that her son was not placed in his room for the night of the offense with handcuffs and foot shackles on; that he did not sleep that night so restrained; and that after he returned to his room for the night she gave him the key to remove the shackles,"[6] appellant had "met the requirement of Penal Code

than the snapshot of a moment, measured against a lifetime of similar government-ordered, medically sanctioned restraints imposed in society's continuing but futile attempts to control Daniel Adelman's behavior. "By enacting Penal Code secs. 9.63, 9.02, 9.03, and 2.03 our Legislature granted considerable leeway to a guardian willing to pick up the burden of caring for an incompetent.... "We hold that the State failed to prove, beyond a reasonable doubt that appellant used force beyond what she reasonably believed was necessary to safeguard and promote the

welfare of her incompetent son." 731 S.W.2d at 146.

5. Jack Keena who witnessed the shackling testified that Daniel "wasn't being violent" and that "he was doing nothing physical" before his confinement.

6. The Court of Appeals correctly observed that appellant's testimony was without impeachment or contradiction. However, there is no indication how Daniel was able to return to his room while being shackled "like a dog."

sec. 9.03." 731 S.W.2d at 145. While we may agree with the Court of Appeals that it would have been rational for *some* trier of fact to conclude that the requirements of Section 9.03 had been met, another trier of fact could have just as rationally rejected that finding.

Conceding that appellant released Daniel from his shackles, she did so only after he had been returned to his jail-like room. We can accept as a rational finding a trier of fact's determination that the requirements of Section 9.03 are not met when the actor "releases" her captive into another form of captivity. That is, a reasonable trier of fact could have believed that even if the complainant was violent when shackled and that shackling a mentally ill person with metal restraints was reasonable under the situation, appellant was still not entitled to justify her actions under Section 9.03 of the Penal Code since she had imprisoned Daniel in what even she had described as her son's "cage."

 Thus, when the evidence is reviewed in the light most favorable to the verdict, we find that any rational trier of fact could have found the essential elements of the offense and could have rejected appellant's defense beyond a reasonable doubt. The Court of Appeals erred in basing its decision upon evidence which supported appellant's defense. The lower court should not have substituted its opinion of the credibility of the witnesses and the weight to be given their testimony for that of the trier of fact. Although some hypothetical, rational trier of fact could have accepted appellant's defense in this case, another trier of fact could have rejected that defense beyond a reasonable doubt and such finding would be legally sufficient to support the conviction. Therefore, the Court of Appeals should have upheld the conviction.

The judgment of the Court of Appeals opinion is reversed and the judgment of the trial court is affirmed.[7]

BENAVIDES, J., concurs in the result.

7. The Court of Appeals addressed appellant's other points of error adversely to her position.

CLINTON, Judge, dissenting.

Because I agree substantially with the sufficiency analysis conducted by the court of appeals in reviewing *all* the evidence, albeit not some of the language it used, *Adelman v. State,* 731 S.W.2d 143 (Tex. App.—Houston [1st] 1987), while the majority practically resurrects the discredited "some evidence" treatment the Court formerly administered in, e.g., *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Cr.App.1974), and reprised in *Combs v. State,* 643 S.W.2d 709, 716–717 (Tex.Cr.App.1982), I respectfully dissent.