TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00086-CR







Charles Ray Hopkins, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 7958, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING








 After the jury found appellant guilty of the offense of intentionally and knowingly
causing serious bodily injury to an elderly person, (1) the trial court assessed punishment at
confinement for life. Appellant asserts two points of error, contending that the evidence is legally
and factually insufficient to support the jury's verdict. We will affirm.

 It is undisputed that William Holeman, age 94, was brutally attacked on the night
of October 30, 1995, resulting in serious bodily injury. Police officer Steve Hallman testified that
he was dispatched to the victim's address about 10:45 p.m. on this date as the result of a "911
hang-up." Hallman looked through the door of appellant's house and saw blood in the kitchen. 
A screen on the kitchen door had been cut. After entry, Hallman saw a steak knife in the sink
with blood on it. Upon entry of the bedroom, the officer found a sheet, pillow, and telephone
covered with blood. Hallman proceeded to the bathroom where he saw an elderly man, dazed,
staggering, and his face covered with blood. Under cross-examination, Hallman stated that he
did not find anything at the scene to connect appellant to the crime.

 Archie Hollingsworth, a veteran officer with the Burnet County Sheriff's
Department was dispatched to the scene to conduct an investigation. Hollingsworth observed a
gun rack with a shotgun shell on the floor, discovered a hole in the wall "where a shotgun blast --
went through the bedroom side," and an empty .410 shotgun shell. Recognizing that a serious
crime had been committed he called Llano Chief of Police Stan Oldham to the scene.

 Officer Oldham found plastic wadding from an expended shotgun shell and small
chips of wood in the victim's bloody bedsheets. Further investigation revealed that the victim's
car and wallet were missing. The victim's car was found partially submerged in a stock tank ten
days later. Both the ignition key and the headlight switch were in the "on" position. 
Subsequently, information furnished by Richard Gass, an inmate in the Burnet County Jail, led
to the arrest of appellant.

 After the prosecutor proffered the information Richard Gass had given Oldham as
an admission against interest, and with the assurance that Gass would be called as a witness,
defense counsel advised the trial court that he had no objection to Oldham's testimony relating to
his conversation with Gass. Oldham testified that Gass told him that appellant came to his brother
Allen's house on the night of March 30, 1995, with a request for help in getting rid of a stolen
car. Richard, who was at his brother's house, followed appellant until he ditched the car. 
Oldham related that the location where the victim's car was found was "almost exactly" where
Gass had told him. Appellant accompanied Gass on the return trip. Appellant rolled down the
car window and threw two pieces of a shotgun into the Llano river. Gass took the stand and
verified the information that Oldham related that he had told him.

 Armed with the information Gass had given Oldham, officers were able to recover
one portion of the .410 shotgun. Oldham opined that the recovered portion of the gun had the
same wood that was found on the victim's bed. Oldham found the victim's wounds consistent
with what would be expected from having been struck with the "butt plate" of a shotgun.

 Richard's brother, Allen Gass, testified that appellant came to his house on the
night of March 30, 1995 asking for help in disposing of a stolen car. Allen asked Richard to "Get
him out of here. Follow him. Do whatever. Just get him out of here." Allen stated that about
a week later while he and appellant were at work at the same place, appellant told him about
stealing the car. Appellant told him that he broke into a man's house, he got into a struggle with
him, appellant took a shotgun away from him and "beat the s out of him pretty good." 
Under cross-examination, Allen testified that appellant had told him that he had slept with his wife
one night. Allen related that it was before he knew his wife, that they were no longer together,
it did not bother him, and he and appellant had been friends.

 Dr. Horis Stedman, the victim's physician, treated the victim following the attack. 
Dr. Stedman testified that the victim did not completely recover from the assault and died as a
result of "traumatic assault, followed by congestive heart failure" about a month and a half after
the assault.


 In reviewing the legal sufficiency of the evidence, we must determine whether,
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 319 (1979). Under the Jackson standard, the reviewing court is not to
position itself as a thirteenth juror in assessing the evidence, nor is it our place to second guess
the determination made by the trier of fact. See Collins v. State, 800 S.W.2d 267, 269 (Tex.
App.--Houston [14th Dist.] 1990, no pet.). The trier of fact (the jury in this cause) is in a better
place than an appellate court to weigh, accept, or reject all or any portion of any witness's
testimony. It is the duty of this Court to determine if the explicit and implicit findings by the trier
of fact are rational under legal standards to support the conviction. See Adelman v. State, 828
S.W.2d 418, 422 (Tex. Crim. App. 1992).

 Appellant urges that the evidence was legally insufficient because no one ever saw
appellant in the victim's house, nor was there ever any physical evidence found in the victim's
house connecting him with the crime. Appellant discounts the Gass brothers' testimony because 
Allen Gass admitted that his wife had had a sexual relationship with appellant. The latter
argument overlooks the reviewing court's deference to the fact finder in weighing the evidence.

 Having reviewed the evidence in the light most favorable to the verdict, we hold
that any rational trier of fact could have found the elements of the offense beyond a reasonable
doubt. Appellant's first point of error is overruled.

 In his second point of error, appellant contends the evidence is factually insufficient
to support the verdict. On appellate review, we may consider factual sufficiency as well as legal
sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd untimely
filed); see also Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996) (adopting Stone test). 
In Stone, this Court set the following standard for factual review:


[T]he court views all the evidence without the prism of "in the light most favorable
to the prosecution." Because the court is not bound to view the evidence in the
light most favorable to the prosecution, it may consider the testimony of defense
witnesses and the existence of alternative hypotheses. The court should set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.



823 S.W.2d at 381 (citations omitted).

 In challenging the factual sufficiency of the evidence, appellant points to the lack
of any fingerprint or other evidence found at the victim's house linking appellant to the crime. 
Appellant argues that the credibility of the testimony of the Gass brother was undermined. In
addition to appellant having had an affair with one of the brother's wife, appellant notes that
appellant's former girlfriend, Sara Jatzlou, contradicted the testimony of the Gass brothers that
they had left appellant at her house on the day the crime occurred. Appellant contends that these
factors give rise to a number of outstanding reasonable hypotheses that exclude appellant's guilt.

 We have reviewed all the evidence, including evidence appellant urges that is
favorable to him and the existence of alternative hypotheses. We hold that the verdict is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Appellant's second point of error is overruled.


 The judgment is affirmed.



 


 Tom G. Davis, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Davis*

Affirmed

Filed: October 28, 1999

Do Not Publish





















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. See Tex. Penal Code Ann. § 22.04(a)(1)(e) (West 1994).



se, nor was there ever any physical evidence found in the victim's
house connecting him with the crime. Appellant discounts the Gass brothers' testimony because 
Allen Gass admitted that his wife had had a sexual relationship with appellant. The latter
argument overlooks the reviewing court's deference to the fact finder in weighing the evidence.

 Having reviewed the evidence in the light most favorable to the verdict, we hold
that any rational trier of fact could have found the elements of the offense beyond a reasonable
doubt. Appellant's first point of error is overruled.

 In his second point of error, appellant contends the evidence is factually insufficient
to support the verdict. On appellate review, we may consider factual sufficiency as well as legal
sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd untimely
filed); see also Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996) (adopting Stone test). 
In Stone, this Court set the following standard for factual review:


[T]he court views all the evidence without the prism of "in the light most favorable
to the prosecution." Because the court is not bound to view the evidence in the
light most favorable to the prosecution, it may con