COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

DANNY
NUNN,                                                  )                     No. 
08-01-00375-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                 County Court at Law No. 4

                                                                              )

THE STATE OF TEXAS,                                     )                   of El Paso County, Texas

                                                                              )

Appellee.                           )                        (TC# 20000C16701)

 

O
P I N I O N

 

Danny
Nunn appeals his conviction for harassment. 
A jury found him guilty and the court assessed his punishment at a fine
of $2,000 and confinement for a term of 180 days.  We affirm.

FACTUAL SUMMARY

Appellant
and Lynda Harris have been divorced since June 1987.  They have one child, Jennifer Nunn.  Doris Sipes, an El
Paso attorney, has known Appellant for approximately eighteen years.  They first met when Appellant retained her to
represent him in connection with the divorce and custody proceedings in Alpine,
Texas.  Sipes
withdrew from representation after only a short time because she had been
appointed to represent Henry Lee Lucas in a high profile criminal matter.  She had no further contact with Appellant
until March 2000.








Appellant
won custody of Jennifer and she lived with him in El Paso from June 1987 until
December 1988.  She began living with her
mother in Alpine when she was five years old. 
The record does not reflect the underlying facts, but Jennifer had no
contact with her father for twelve years. 
With the encouragement of a friend, seventeen-year-old Jennifer wrote a
letter to Appellant in 1999 in an effort to establish a relationship.  Appellant responded by writing dozens of
letters to her in which he described satanic worship, prostitutes, cocaine
addicts, and his own sexual conduct with women. 
He also sent her copies of letters he had mailed to Sipes
with additional notations in the margins. 
Upset, Jennifer showed the letters to her mother.  Harris read the letters, several of which
mentioned Sipes and Carol Coyner
and accused all three women of conspiring to murder Appellant.  Harris decided to telephone Coyner because of the threats made against her life.[1]  After speaking with Coyner,
Harris faxed her a copy of a letter.  Harris also called the El Paso Police
Department and filed a harassment report.

Carol
Coyner is a publisher in El Paso.  She met Appellant in 1994 when he became a
customer of her publishing and print shop. 
They began dating in 1998 and later lived together for approximately a
year.  Appellant also began working for Coyner.  One evening,
Appellant became furious about something another employee had done and he began
ranting and raving.  In Coyner=s
words, Appellant Ajust
turned into a monster@
and she saw a side of him she had never seen before.  They broke up that same evening.  Coyner spoke with
Appellant a few weeks later, but he was verbally abusive and he continued to
behave strangely.  Coyner
made Appellant move his belongings out of her home that same evening.








Shortly
after Appellant moved out, he began making hangup
telephone calls to Coyner, calling her once or twice
a day for the next six weeks.  Coyner reported the harassing phone calls to the police and
a detective contacted Appellant in February. 
In mid-February, the telephone calls ceased, but Appellant began sending
letters to Coyner stating that he was watching
her.  Coyner
often saw him sitting in his truck when she went to the post office or bank.  He also drove by her business on Doniphan
several times a day.








At
about the same time, Coyner received a telephone call
from Lynda Harris advising her of the letters Appellant had been sending to
Jennifer.  In these letters, Appellant
kept predicting that Coyner would be found dead with
a bullet in her head or that she would be run over by a truck while walking
down Doniphan.  The letters also accused Coyner of being a cocaine addict and a member of a satanic
cult.  Appellant sent copies of some of
the letters to Coyner=s
friends.  Terrified by the letters and
Appellant=s
conduct, Coyner called the El Paso Police Department
to make another report.  She also
obtained a protective order in September 2000. 
Despite the protective order, Appellant began sending e-mail messages to
Coyner.  As was
the case with the letters, Appellant repeatedly predicted that Coyner would be found dead and he accused her of being a
member of a satanic cult.      Detective Anna Soto of the El Paso Police
Department was assigned to the harassment case in January 2000.  Coyner initially
told Soto that she did not wish to prosecute Appellant but simply wanted him to
stop harassing her.  Soto telephoned
Appellant and spoke with him about Coyner=s allegations.  He admitted calling Coyner
but insisted it was only to talk to her about a W-2 form.  Soto told Appellant she would mention the W-2
form to Coyner but that he should stop calling
her.  In March 2000, Coyner
filed a new harassment report based upon the threatening letters he had sent
her.  Soto again telephoned
Appellant.  He admitted sending letters
to Coyner but told Soto that he was conducting an
investigation of a conspiracy to murder him involving Coyner,
Sipes, and the El Paso Police Department.  He went so far as to tell Soto that Coyner had put his family in grave danger and Ashe would have to pay.@

Doris
Sipes received a manila enveloped at her office
address from Appellant.  The envelope,
which was postmarked March 25, 2000, contained several letters, a Bible, and a
book of poetry written by Appellant.  The
letters accused Sipes of being a witch, having sex
with a woman, having sex with animals, hiring people to commit murder, and
engaging in satanic conspiracies.  The
Bible contained the following handwritten inscription on its presentation page:

Presented
to

Doris Sipes - El Paso, Texas Head Witch of the Satanic Cult >Hidden Hands of Death=

by

Mr. Danny Nunn - El
Paso, Texas Author of >In
the Best Interest of a Conspiracy=
and >In her
Last Day, One Nation Under God=

on

To Be Recieved [sic] By Doris Sipes on
April 14, 2000 - The Birthday of Adolph Hitler - And the Frist
[sic] Anniversary of the Columbine High School Murders.  I know who murdered my best friend Joe
Johnson - Joe Ochoa - all Satanic killings.  

The inscription
is signed by ADanny
Nunn.@  A handwritten message appears on the inside
cover of the Bible:

Doris Sipes, this book of God is for you, when you do your
satanic rituals this Easter. I know the places that they could be held, Texas
or New Mexico.  Mt. Riley
or the Teepee Ranch.  Out by Horizon on top of the mesa.  One road in and no way out.  Kind of like your one way trip to hell.  But look at it this way Doris at least you
know that you won=t freeze
to death.  We all have to meet our maker,
and we all know what he will have to say to you.  Thanks for the phone call the other day from
the fake cop, very helpful.  I know all
about the horse mutilation down in Clint. 
Gave law enforcement all the information on it about you
and your people.  Be careful about
those old tainted bon fires that might have a bomb hidden under them.  The eyes of God will always be on you even in
the dark.  Look to the skies when you do
your rituals.  It could be a low flying
helicopter with me and law enforcement.

 

Doris, I just love
book signings, don=t
you.  Doris, you know this will go all
over the world be for [sic] you even get it.  

 








It is signed by AThe Witch Hunter, Danny Nunn.@ 
Given the statements in the letter, Sipes
became alarmed that the package contained a bomb and called the El Paso Police
Department.  On the same day that Sipes received this package, someone called in a bomb
threat and left a box across the street from Sipes= office near St. Patrick=s Cathedral.  No bomb was found by law enforcement
authorities but the threat interrupted proceedings at the church.

Yet
another letter sent to Sipes by Appellant stated:

Doris -- See ya Saturday nite at your big
ritual.  I know where you will hold
it.  Stay home if it is a cloudy
night.  You could get struck by
lightning.  God has got pretty close to
you with lightning at the church across the street from your office.  Maybe the next time he won=t miss. 


 

Nunn,
who waived his right to counsel and represented himself at trial, testified
that he had sent the letters, the book of poetry, and the Bible to Sipes.  Similarly, he
admitted making hangup phone calls to Coyner, and sending her letters and e-mail messages.  He claimed that he did not intend to scare Sipes or Coyner but was merely
attempting to investigate their involvement in a satanic cult.  The jury rejected Appellant=s defense and found him guilty as
alleged in the information.

LEGAL SUFFICIENCY

In
his sole point of error, Appellant challenges the legal sufficiency of the
evidence to sustain his harassment conviction because the letters were sent to
a third person, not Carol Coyner.

Standard of Review








In
reviewing the legal sufficiency of the evidence to support a criminal
conviction, we must review all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318‑19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). 
This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic to ultimate
facts.  Jackson, 443 U.S. at 319,
99 S.Ct. at 2789, 61 L.Ed.2d at 573.  We do not resolve any conflict of fact or
assign credibility to the witnesses, as it was the function of the trier of fact to do so. 
See Adelman v. State, 828 S.W.2d 418,
421 (Tex.Crim.App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, our duty is only to determine if
both the explicit and implicit findings of the trier
of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843.  Further, the standard of review is the same
for both direct and circumstantial evidence cases.  Geesa, 820 S.W.2d at 158.

Elements of the Offense








A
person commits the offense of harassment if, with intent to harass, annoy,
alarm, abuse, torment, or embarrass another, he initiates communication in
writing and in the course of the communication makes a comment, request,
suggestion, or proposal that is obscene. 
Tex.Pen.Code Ann. '
42.07(a)(1)(Vernon Supp. 2002).  For purposes of this section, Aobscene@
means containing a patently offensive description of or a solicitation to
commit an ultimate sex act, including sexual intercourse, masturbation,
cunnilingus, fellatio, or anilingus, or a description
of an excretory function.  Tex.Pen.Code Ann. '
42.07(b)(3).  A
person also commits harassment if, with intent to harass, annoy, alarm, abuse,
torment, or embarrass another, he threatens, by telephone or in writing, in a
manner reasonably likely to alarm the person receiving the threat, to inflict
bodily injury on the person or to commit a felony against the person, a member
of his family, or his property.  Tex.Pen.Code Ann. '
42.07(a)(2).

In
the first paragraph, the information alleged that Appellant, with intent to
harass, annoy, alarm, abuse, torment, and embarrass Carol Coyner,
initiated a communication in writing and in the course of the communication
made an obscene comment, to wit:  that
Carol Coyer had performed deviate sexual intercourse upon Appellant.  In the second paragraph, the information
alleged that Appellant, acting with the same intent described in the first
paragraph, threatened in writing, in a manner reasonably likely to alarm Coyner, to inflict bodily injury upon her.  The court=s
charge instructed the jury consistent  with these allegations.

Whether Coyner was the
Intended Recipient of the Letters

Appellant
argues that the evidence is insufficient because Coyner
was not the intended recipient of the threatening writings.  Therefore, the State failed to prove that the
harassment was made in a manner reasonably likely to alarm the person receiving
the threat.  Contrary to Appellant=s view of the evidence, there is
substantial evidence that Appellant sent letters and e-mails directly to Coyner.  She
affirmatively testified Appellant sent letters and e-mail messages directly to
her.  The envelopes and letters were
addressed to Carol Coyner at her place of business
and the harassing e-mail messages were sent to her e-mail address.  Appellant=s
assertions are further contradicted by his statements to Detective Soto
admitting he had sent letters to Coyner.  Finally, he admitted during his testimony at
trial that he sent the letters and e-mails to Coyner.  Because there is ample evidence that
Appellant intended that Coyner receive the writings,
his sole point of error is overruled. 
The judgment of the trial court is affirmed.

 

October 17, 2002

                                               
                          

ANN CRAWFORD McCLURE, Justice

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]  Coyner, Harris, and Sipes did not
know one another prior to these events. 
Harris found Coyner=s telephone number because Appellant mentioned the
name of her publishing company in one of the letters.