

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00359-CR

**JOE LOUIS LANDRUM,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

From the 82nd District Court
Falls County, Texas
Trial Court No. 8563

## MEMORANDUM OPINION

A jury found Appellant Joe Landrum guilty of aggravated robbery and assessed an eighty-year prison sentence. In his sole issue, Landrum asserts that the evidence is legally insufficient. We will affirm.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v.*

*Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

> In reviewing the sufficiency of the evidence, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State,* 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[i]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."); *Barnes v. State,* 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Alexander v. State,* 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara,* 152 S.W.3d at 49. On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id*.
> . . .
> Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.
> . . .
> [C]ourts of appeals should adhere to the *Jackson* standard and determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.

*Hooper v. State,* 214 S.W.3d 9, 13, 15-17 (Tex. Crim. App. 2007).

The evidence shows that two persons—a young woman and a young man—

entered the home of George Harlan, a disabled 73-year-old widower, around 9:00 pm in Marlin. The man asked Harlan for his money, hit Harlan in the face, and threw him to the floor. The intruders tied Harlan's hands behind his back and his feet with cut telephone cords, and they gagged him by stuffing a sock in his mouth. They then went through Harlan's pockets and every room in his house, and left in Harlan's pickup truck. Harlan was able to free himself to walk to a neighbor's house, and the police were called.

Harlan said that he got a good look at the male assailant because his face was only inches from Harlan when he demanded money. Within an hour, he described to police the two persons as being a black male and a "light-complected" female, both between the ages of 19 and 25. The male looked like a boxer, about five feet, ten inches tall, and was wearing a black hood. Items taken in the robbery included Harlan's cell phone, credit cards, fifty-cent coins, and his truck.

On the next day, Harlan's daughter learned that her father's stolen credit card had been used in Temple and that his cell phone had been used. She obtained a print-out of the cell phone's activity usage and gave it to police, who determined that a call had been made to Linda Adams, who lived in Chilton. Landrum also lived in Chilton. Police interviewed Adams, who told them she had received a phone call from Ashley Collins, her granddaughter, on the night of the robbery. Adams told police that her granddaughter was 19 years of age and dated a young black man who was 22 or 23 years of age and was called "Duke," a nickname for Landrum. Adams gave police a photo of Collins and Landrum together.

Based on the photo, police developed two photo line-ups for Collins and Landrum, and two days after the robbery, Harlan identified Collins as the female and believed that the black male was one of two in the photo spread. Landrum was one of the two. At trial Harlan identified Landrum as the male assailant.

Adams said that Collins was not dating anyone but Landrum and that on the day of the robbery, she had left with Landrum that morning. When Collins called Adams on the night of the robbery, Collins left a message on Adams's answering machine, and Adams could hear Landrum's voice in the background. A car dealership employee testified that Landrum and Collins were in Marlin on the afternoon of the day of the robbery and were on foot, and the car dealership was in close proximity to Harlan's home.

Police were able to determine that Harlan's cell phone was used to make toll-free calls to Harlan's credit card companies after the robbery, and Harlan's card was used or attempted to be used at an ATM in Temple after the robbery. Photos from the Temple ATM were obtained, and they show a young black male in a hooded sweatshirt. A police officer identified Landrum as the person in the ATM photo, as did Adams and Stephanie Roberson, the girlfriend of Landrum's uncle.

Harlan's truck was found in Temple, and Collins and Landrum were apprehended in a Temple apartment that was a mile and a half from where the truck was found. Roberson said that Landrum and Collins showed up at her apartment on the night of the robbery, and Landrum was wearing a "hoodie." When they were apprehended, they were trying to sneak out of a back window of the apartment.

Among the items found in Collins's purse were Harlan's cell phone and fifty-cent coins believed to have been taken in the robbery.

Landrum did not present any alibi evidence and did not dispute Collins's involvement in the robbery. His trial attorney vigorously cross-examined witnesses, including Harlan, on the male assailant's identity.

The gist of Landrum's no-evidence complaint is that Harlan's identification of Landrum as the male assailant is suspect because Harlan could not positively identify Landrum in the photo line-up. As a result, the jury's guilty verdict is irrational because Landrum's movement from Marlin to Temple cannot be considered as evidence of flight and Collins, not Landrum, possessed Harlan's stolen property. But we view all of the above-detailed direct and circumstantial evidence in the light most favorable to the verdict, and its combined and cumulative force is legally sufficient; a rational juror could find, beyond a reasonable doubt, that Landrum committed the aggravated robbery.

We overrule Landrum's sole issue and affirm the trial court's judgment.


          REX D. DAVIS
          Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed August 25, 2010
Do not publish
[CRPM]