Opinion filed December 29,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00363-CR

                                                    __________

 

                               VALENTIN
RODRIGUEZ, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 238th District Court

 

                                                          Midland
County, Texas

 

                                                   Trial
Court Cause No. CR34036

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            A
grand jury indicted Valentin Rodriguez of three counts of indecency with a
child by contact.  The indictment also contained two enhancement paragraphs. 
The jury found Rodriguez not guilty of the offense alleged in the first count,
but found him guilty of the offenses alleged in the other two counts. 
Rodriguez pleaded true to the enhancement paragraphs.  The jury found them to
be true and assessed Rodriguez’s punishment at confinement for seventy-five
years on Count Two and ninety-nine years on Count Three.  The sentences were to
run concurrently, but were to run consecutively to other sentences that
Rodriguez was already serving for other offenses.  Rodriguez appeals his
conviction in three issues.  We affirm.

            In
his first issue on appeal, Rodriguez argues that the trial court erred when it
did not sua sponte instruct the jury that the State must prove the existence of
extraneous offenses beyond a reasonable doubt.  Second, he asserts that the
trial court reversibly erred when it failed to grant him a continuance during
the punishment phase of the trial.  Finally, Rodriguez claims that the evidence
was legally and factually insufficient to support the verdict of the jury on Counts
Two and Three.

            We
will first review Rodriguez’s sufficiency arguments.  Rodriguez challenges the
sufficiency of the evidence to support the verdict.  We review a sufficiency of
the evidence issue, regardless of whether it is denominated as a legal or as a
factual sufficiency claim, under the standard of review set forth in Jackson
v. Virginia, 443 U.S. 307 (1979).  Brooks v. State, 323 S.W.3d 893,
912 (Tex. Crim. App. 2010); Polk v. State, 337 S.W.3d 286, 288–89 (Tex.
App.—Eastland 2010, pet. ref’d).  Under the Jackson standard, we
examine all of the evidence in the light most favorable to the verdict and
determine whether, based on that evidence and any reasonable inferences from
it, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Isassi
v. State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The
victim, C.R., testified.  She told the jury that her date of birth was July 1,
1991, and that she had lived in Wisconsin with her maternal grandmother and her
step-grandfather until she was fifteen years old.  When she was fifteen, her
grandmother and step-grandfather decided to send her to her mother in Virginia. 
C.R. and her sister moved to Virginia and lived there with their mother and
stepfather.  They lived there about six months, and in early February 2007, the
four of them moved to Midland to live with Rodriguez, C.R.’s maternal
grandfather.

Rodriguez
lived in a house that essentially consisted of a living room/bedroom/kitchen
combination and a bathroom.  There was also a trailer on Rodriguez’s property,
and it was located a few feet from the house.  C.R., her mother, her stepfather,
and her sister intended to live in the trailer when it was made suitable.  They
moved into Rodriguez’s house for a few days while they readied the trailer.

After
the trailer was ready, C.R., her mother, her stepfather, and her sister moved
into it.  C.R. lived in the trailer for only a few days before she got into a
fight with her mother and moved back into Rodriguez’s house.

C.R.
was still living with Rodriguez on Saturday, February 24, 2007.  It was cold
that day, and C.R. and Rodriguez stayed inside and watched movies all day.  C.R.
testified further that there were neither sofas nor chairs in the living area;
there were only two beds, a dresser with a television on it, a heater, and a
table.  C.R. said that, because the television was facing Rodriguez’s bed, because
it was cold, and because the heater faced Rodriguez’s bed, she lay down with him
to watch movies.

C.R.
testified that, as she was falling asleep, Rodriguez began to rub her “where [she]
pee[s].”  He also tried to touch her breasts but was not able to because of the
position of her arms.  At some point, he pulled down C.R.’s pajama bottoms and
her panties and stuck “his private in [her] butt.”  As a matter of
clarification, she testified that he actually never placed his “private” inside
her body, just inside her “butt cheeks.”  He stopped when C.R.’s mother came
into the house.  She had come to the house to get coffee for C.R.’s stepfather. 
After her mom got the coffee and left, C.R. went back to her own bed.  C.R.
told the jury that, although she was scared, she eventually went to sleep.

The
next morning, C.R.’s mom came back for more coffee.  After she left, Rodriguez
said, “Burr, it’s cold,” and got into bed with C.R.  C.R. said that Rodriguez
started “rubbing [her] butt.”  He pulled her pajamas and underwear down and
“did what he did the night before.”    Eventually, he stopped, and when he did,
she felt “something cold and wet on [her] butt.”  Rodriguez cleaned her up and
pulled up her pajamas; C.R. got up and took a shower.  When she got in the
shower, C.R. took her clothes off and laid them on the bathroom floor between
the shower and the toilet.  These clothes included a pair of blue panties that
C.R. had been wearing that night.

Daniel
J. Lindley, a forensic scientist in the DNA section of the Texas Department of
Public Safety crime laboratory, testified that he found semen in the back
crotch area of those blue panties.  He compared known blood of C.R. as well as
known blood from Rodriguez with the semen stain found on the blue panties.  Lindley
performed DNA tests in this case, and he testified that he could say to “a
reasonable degree of scientific certainty, Suspect V. Rodriguez is the source
of the sperm cell fraction of the stain from the panties.”  The evidence shows
that Rodriguez could not be excluded as the contributor of the stain and that
the “probability of selecting an unrelated person at random who could be the
source of this DNA profile is approximately 1 in 370.1 quintillion for
Caucasians, 1 in 319.7 sextillion for Blacks, and 1 in 439.6 quadrillion for
Hispanics.”

On
the second day of the events described to the jury by C.R., she talked to her
friend, Monica, and told her about what had happened; she also told Monica’s
boyfriend, Mandito.  Mandito and some of his friends confronted Rodriguez and
then “started beating him up.”

In
testimony before the jury, Rodriguez denied the criminal charges.  Rodriguez
testified that, on the day of the alleged offenses, C.R. asked him to spend the
whole day with her and watch movies.  At some point in time while they were
watching movies, a lady came to the house.  Rodriguez told the jury that the
lady was a “friend with privileges” and that he told C.R. that he was a man
with “some needs” and wanted to be alone with this friend.  C.R. later came
back in the house and saw Rodriguez having intercourse with the friend; the
friend immediately got up and left.

C.R.
told the jury that there were no females who came by that day, that Rodriguez
had not told her to stay outside while he went inside with a lady, and that she
had not walked in on Rodriguez and a lady having intercourse that day or any
other day.

Rodriguez
testified that, after the lady left, he and C.R. continued to watch movies. 
C.R. was lying on Rodriguez’s bed while they watched movies; they were under
separate covers and stayed in that same bed all night.  Rodriguez told the jury
that some of the scary movies did not appeal to him and he fell asleep around
midnight and that C.R. went to her own bed around 6:00 or 6:30 the next
morning.

Law
enforcement officers arrested Rodriguez later that day.  Midland County Corrections
Officer Adam Hilliard testified that, the morning after the officers arrested Rodriguez,
Rodriguez asked to make a telephone call.  During that telephone call, Officer
Hilliard overheard Rodriguez ask a friend, Brad B. Lawrence, to get a blanket
out of the washing machine and put it in the dryer.  He also asked Lawrence to
get some clothing out of what the officer believed to be the bathroom, wash the
clothes, put them in a plastic bag, and put them in a closet so that his
daughter would not come and take them.  He seemed to be concerned about a white
T-shirt, some socks, and underwear.

Miguel
Ramos, a Midland County jailer, also overheard the telephone conversation
between Rodriguez and Lawrence.  He recalled that Rodriguez said something to
the effect of “do it now.”

Lawrence
also testified.  He told the jury that he was at Rodriguez’s property when he received
a telephone call from Rodriguez at the jail.  Rodriguez wanted him to do some
laundry.  Lawrence put soap in the washing machine, but he could not get the
washing machine to start and, therefore, did not wash the laundry.

Sergeant
Rick Rowland with the Midland County Sheriff’s Office participated in the
execution of a search warrant at Rodriguez’s house.  He found the blue panties
that contained semen stains.  He found that the washing machine contained soap,
and he also found a blanket or comforter in the dryer.  Lawrence was at
Rodriguez’s property when Sergeant Rowland performed the search at around two
o’clock in the afternoon.  Sergeant Rowland had a brief conversation with
Lawrence.  Lawrence told the sergeant that he was there to pick up some
clothes, wash them, put them in a plastic bag, and put the bag in a closet. 
Lawrence said that he put the clothes in the washer but that he could not get
it started.  Although photographs of the scene show that Lawrence was present
when the search warrant was executed, Lawrence testified that he did not
remember seeing any deputies there at the time; he was extremely intoxicated at
the time that he talked to Sergeant Rowland.

Because
C.R. had been living elsewhere, Rodriguez actually had known his granddaughter
for approximately nine days.  However, he described C.R. to the jury as a real
fighter; she “can really fight you.”  He also told the jury that C.R. fought with
her grandmother, her step-grandfather, her stepbrothers, and her mother.  On one
occasion, in Rodriguez’s presence, C.R. hit her mother, and in response, Rodriguez
slapped C.R. “real hard”—so hard it broke a bone in his hand—because he thought
she was about to hit him.  She fell to the floor and then got up and ran about
ten or fifteen feet away, “cussing [Rodriguez] out.”  Rodriguez and another
prisoner put the “broken” bone back in place after he was in the jail. 
Although she admitted to some fighting with her mother, C.R. denied that
Rodriguez ever slapped her.  Rodriguez also testified that C.R.’s mother had
told him to watch out for C.R. because she was “a snake.  She’s gonna bite
you.”  Rodriguez told the jury that he had no idea how his “sperm got in
[C.R.’s] panties.”

Although
Rodriguez and C.R. told different versions of the events, a jury is the trier
of fact and may accept or reject any or all of the testimony of any witness.  Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).  We have reviewed all
of the evidence in the light most favorable to the verdict, and we hold that a
rational trier of fact could have found the elements of the crimes beyond a
reasonable doubt.  We overrule Rodriguez’s third issue on appeal.

In his first issue on appeal, Rodriguez argues that the
trial court erred when it did not instruct the jury that the State was required
to prove extraneous offenses beyond a reasonable doubt.  The extraneous
offenses to which Rodriguez refers are in fact a part of 
Rodriguez’s prior criminal record, not extraneous offenses.  Bluitt v. State,
137 S.W.3d 51, 54 (Tex. Crim. App. 2004).  Those offenses, which were
introduced into evidence and to which Rodriguez pleaded true, had already been
subjected to the “beyond a reasonable doubt” burden of proof.  Further proof of
guilt beyond a reasonable doubt was not necessary, and the trial court did not
err when it did not instruct the jury on extraneous offenses.  We overrule
Rodriguez’s first issue on appeal.

Rodriguez argues in his second issue on appeal that the
trial court abused its discretion when it refused to grant him a continuance so
that he could get witnesses for the punishment phase of the trial.  We review a
trial court’s decision to grant or deny a motion for continuance for an abuse
of discretion.  Gallo v. State, 239 S.W.3d 757, 764 (Tex. Crim. App.
2007).  A defendant must show that he was actually prejudiced when the trial
court denied his motion.

The jury found Rodriguez guilty on a Thursday.  The
punishment hearing began the following Monday.  Just prior to the start of the
punishment phase of the trial, Rodriguez’s attorney told the judge that
Rodriguez had given him some information on how to contact certain witnesses he
wanted to call.  Rodriguez’s attorney told the court that he had tried to reach
the witnesses at the telephone numbers Rodriguez had given him, but that he
could not reach the witnesses.  He wanted twenty-four hours to try to contact
them in some other manner.  Rodriguez did not show the trial court what the
testimony of these witnesses would be if they were to appear.  Rodriguez has
failed to establish that he suffered any specific prejudice when the trial
court denied his oral motion for continuance.  Absent a showing of actual prejudice,
we cannot hold that the trial court abused its discretion when it denied
Rodriguez’s oral motion for continuance.   See Heiselbetz v. State, 906
S.W.2d 500, 511 (Tex. Crim. App. 1995) (where there was no showing of actual
prejudice, there was no abuse of discretion).  We overrule Rodriguez’s second issue
on appeal.

We affirm the judgment of the trial court.

 

 

                                                                                    JIM
R. WRIGHT

                                                                                    CHIEF
JUSTICE  

 

December 29,
2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.