COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-534-CR
 
  
DONALDO 
ENRIQUE VALERIO                                                 APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 213TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Donaldo Enrique Valerio appeals from his conviction of indecency with a child. 
Appellant was charged with one count of aggravated sexual assault of a child and 
two counts of indecency with a child. A jury found him not guilty of aggravated 
sexual assault and guilty on both counts of indecency with a child. The jury 
assessed his punishment at six years’ imprisonment for one count of indecency 
with a child by contact and ten years’ imprisonment, probated, for one count 
of indecency with a child by exposure. The trial court sentenced him 
accordingly. In one issue, Appellant argues that the evidence is factually 
insufficient to support the convictions. We affirm.
Background 
Facts
        Appellant 
is the biological father of the victim, R.V., and is married to R.V.’s mother, 
Yvonne Valerio. In February 2004, R.V. and her sister were fighting. Appellant 
and R.V. then had an argument because Appellant told R.V. to stop hitting her 
sister. Afterwards, R.V. told her mother that Appellant had previously touched 
her in a sexual way. At trial, evidence against Appellant came in the form of 
testimony from R.V., Yvonne Valerio, Araceli Desmarais, the sexual assault exam 
nurse, and the detectives who investigated the allegations and spoke with 
Appellant regarding the alleged sexual abuse. Appellant’s statement to police 
and his handwritten statement admitted into evidence controvert the allegations 
of sexual abuse made against him by his daughter.
R.V.’s testimony
        R.V. 
testified that when she was six or seven years old, she was sexually abused by 
her father. Appellant and R.V. were home alone when Appellant told his daughter 
to go into her parents bedroom and “to take [her] pants off.” She then 
stated that “he put his private area on [hers].” On another occasion, R.V. 
stated, “[h]e licked [her] private area.” R.V. testified that she did not 
tell her mother because she was afraid. When R.V. was approximately twelve years 
old, she told her mother that her father had touched her in a sexual way. On 
cross-examination, R.V. admitted that she told her mother about what happened 
after she had an argument with Appellant. R.V. also testified that when she told 
her mother about the sexual abuse, she was angry with Appellant for disciplining 
her for fighting with her sister.
Yvonne Valerio’s testimony
        Yvonne 
testified that R.V. told her that Appellant had touched her in a sexual way. R.V. 
told her mother that it had only happened one time, but Yvonne testified that 
she had her doubts that it only happened once. However, she testified that she 
believed her daughter was telling the truth about the sexual abuse. She stated 
that after R.V. told her about the abuse, she asked questions about what had 
happened and the questions were ones that only required a “yes” or “no” 
answer.
Araceli Desmarais’s testimony
        The 
State also presented testimony from Desmarais, who had examined R.V. shortly 
after the allegations of sexual abuse had been reported. Desmarais testified 
about her exam and interview of R.V. She stated that the exam results were 
“normal,” but that she did not expect to see any injury because “she 
denied him penetrating into her hymen.  She described oral copulation, 
which is not going to leave any injury.  Plus it happened when she was five 
and I believe she was nine--nine or ten when I saw her.[2]   
So it had been a long time.”  Desmarais testified that R.V. told her that 
the sexual abuse happened about three times when she was five years old.
Detective Ermatinger’s Testimony
        Detective 
Ermatinger with the Arlington Police Department testified that she was contacted 
by a CPS investigator regarding the sexual abuse of R.V. CPS had given 
Ermatinger a video tape of an interview with R.V. After she reviewed the tape, 
Ermatinger contacted Yvonne. She testified that there was a language barrier 
because Yvonne spoke Spanish and Ermatinger did not, so Myrna Ramirez, 
Ermatinger’s secretary, interpreted for Ermatinger. Eventually, Yvonne met 
with Ermatinger at her workplace, the Alliance for Children, located at 1320 
West Abram, gave a statement to the police. Ermatinger contacted Detective Frias, 
who was fluent in Spanish, to assist her with interviewing Appellant.
Detective Frias’s Testimony
        Detective 
Fias testified that he and Ermatinger went to Appellant’s place of employment 
and that he read the Miranda[3] warnings to 
Appellant in Spanish. When Fias told Appellant that the police were 
investigating allegations that he had fondled his daughter several years 
earlier, he denied that this had occurred and could not understand why “a 
child would make something like this up.” Appellant’s handwritten statement 
was admitted into evidence and read to the jury, in Spanish and then translated 
into English. It stated:
   
One time she was with her buttocks up and I told her that that was not good 
because she was—because what she was doing—because what she was doing was 
not right.  And then 15 days—or after 15 days she went to take a bath and 
she came out and called me—and [I am not sure if it says I was or she was—I 
think it was] I was lying down in the—on the mattress where her mother and I 
sleep. And she was lying down holding her private parts and she asked me if I 
could make her a woman. And then I told her that why would she say that. And she 
said that because they had already touched her in Maryland.  And I then 
told her that that was not good and that no one should touch her there, not 
with—not with—with a penis or with the hand unless she decides, and 
that—and I had touched her part but not sexually.
 
 
Standard of 
Review
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. at 484-85. “This standard acknowledges that evidence of 
guilt can ‘preponderate’ in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.” Id. at 485. 
In other words, evidence supporting a guilty finding can outweigh the contrary 
proof but still be insufficient to prove the elements of an offense beyond a 
reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at 484, 486-87. An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003).
Factual 
Sufficiency
        Appellant 
contends that the evidence at trial was factually insufficient to support his 
convictions for indecency with a child. Specifically, he argues that the 
allegations R.V. made against him were inconsistent and did not relate specific 
details of what occurred. Appellant argues that considering that R.V. made the 
outcry six to eight years after the alleged events occurred when she was angry 
at Appellant, and considering the numerous inconsistencies in R.V.’s 
explanation of the sexual abuse, her credibility is questionable.
        The 
weight to be given conflicting testimony lies within the sole province of the 
jury, and the reviewing court must show deference to the jury’s determination. 
Cain, 958 S.W.2d at 408-09. A decision is not clearly wrong and unjust 
merely because the jury resolved inconsistent evidence in favor of the State. Id. 
at 408. Appellant’s challenge to the factual sufficiency of the evidence is 
nothing more than an attack on the credibility determination made by the jury. 
We do not resolve any conflict of fact or assign credibility to the witnesses, 
as it was the function of the trier of fact to do so. See Adelman v. State, 
828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 
839, 843 (Tex. Crim. App. 1991). We may disagree with the jury’s determination 
only when the record indicates such a step is necessary to “arrest the 
occurrence of a manifest injustice.” Johnson v. State, 23 S.W.3d 1, 9 
(Tex. Crim. App. 2000). Here, viewing the evidence in a neutral light, we cannot 
say the jury’s verdict was clearly wrong or manifestly unjust. Accordingly, we 
overrule Appellant’s sole issue and affirm the trial court’s judgment.
  
  
                                                                  BOB 
MCCOY
                                                                  JUSTICE
  
 
PANEL 
B: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
August 4, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
We recognize that Desmarais testified that she examined R.V. when she was nine 
or ten years old.  However, the record reflects that at the time of trial, 
October 2004, R.V. was thirteen years old, and she was twelve years old when she 
told her mother about the sexual abuse.
3.  
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).