COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

HUGO ANTONIO ROMERO,                            )

                                                                              )              
No.  08-04-00277-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
168th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )                      (TC# 73192)

                                                                              )

 

 

O P I N I O N

 

Hugo Antonio
Romero was indicted for two counts of aggravated assault with a deadly
weapon.  A jury found him guilty of both
counts and assessed punishment at 20 years=
imprisonment and a fine of $10,000.  In
three issues, Appellant challenges the legal and factual sufficiency of the
evidence to sustain his conviction and complains of ineffective assistance of
counsel at trial.  We must affirm.








On October 12,
1993, Errol Lockett and a friend went to the Anthony Bar in Anthony, Texas
around 11:30 p.m.  Mr. Lockett=s friend left at approximately 1 a.m.,
but Mr. Lockett decided to stay at the bar, which usually closed at 2 a.m.  As he was leaning up against the bar, facing
the bartender, he was struck from behind with a heavy object.  The first blow was to the back of his
head.  When he turned around, he was
struck just over his nose and then on the mouth.  Mr. Lockett was knocked to the floor.  Mr. Lockett suffered extensive facial
injuries as a result of the attack, including loss of his two front teeth,
fractures to both sides of his face, a torn upper lip, and damage to his nose.

Mr. Lockett
underwent surgery for his injuries and was unconscious for several days.[1]  It was more than four months before Mr.
Lockett could walk on his own and his jaw was wired shut for over a month.  Mr. Lockett never saw his assailant because
the attack happened so quickly.

Miguel Garcia was
a customer at the Anthony Bar that night. 
Mr. Garcia testified that prior to the attack, he saw a man leave the
bar, but return five minutes later, demanding to know who had broken his car
windows.  The man then struck a black man
three times and someone called the police. 
Mr. Garcia did not see the assailant=s
face and the assailant ran off before the police arrived.

Oscar Minjarez, a
lifelong friend of Appellant, was at the Anthony Bar with his friend Cesar
Monreal on the night of the assault.  Mr.
Minjarez and his friends frequented the bar once or twice a month and he
recalled seeing Mr. Lockett there a couple of times before.  Mr. Minjarez was admittedly drunk that
night.  He recalled that Appellant came
into the bar, drank a beer, and then left. 
Mr. Minjarez saw Mr. Lockett laying on the floor, but did not see him
being beaten nor did he see who had beaten him. 
Mr. Minjarez could not say for certain whether or not Appellant was the
one who had beaten Mr. Lockett.








Cesar Monreal
testified that back in 1993 he had heard of Appellant, but did not know him
personally, and he only knew Mr. Lockett casually.  On the night in question, he was drinking and
playing pool with Mr. Minjarez.  He did
not remember seeing Appellant come into the bar.  But he did recall seeing an angry man come
into the bar carrying a tire jack and yelling that someone had broken a
window.  The man walked over to Mr.
Lockett and hit him with the tire jack, swinging it like a baseball bat.  He saw Mr. Lockett turn around, only to be
hit a second time.  Mr. Minjarez saw
Mr. Lockett fall to the ground.  The
assailant then walked out the door with the tire jack still in his hand.

Mr. Monreal also
admitted that he had testified that he had been interviewed by Investigator
Jorge Perez and the state prosecutor on July 24, 2004, and that he probably
told them that it was the Appellant who struck Mr. Lockett on the head with a
tire jack at least twice. 
Mr. Monreal also admitted telling them that he was afraid of
retaliation by Appellant=s
family members in the area.  On
cross-examination, Mr. Monreal maintained that he did not recognize Appellant
as the man who was carrying the tire jack. 
He also stated that he was not afraid to tell the truth at trial.








At the time of the
assault, Officer Richard Bartlett was a patrolman with the Anthony Police
Department.  The assault case was
assigned to him on December 6, 1993.  The
officer took a voluntary witness statement from Saul Zavala.  Mr. Zavala told Officer Bartlett that he and
Appellant were talking at the Anthony Bar around 1 a.m. before Appellant
left.  Appellant returned ten to fifteen
minutes later, carrying a tire jack and demanding in a loud voice to know who
had broken his car windows.  Appellant
went over to Mr. Lockett, a black man, and hit him in the back with the tire
jack.  Appellant then hit the victim two
or three more times after he fell.  Then
Appellant left the bar.  After giving the
statement, Mr. Zavala identified Appellant from a photo lineup.  Officer Bartlett identified Appellant in the
courtroom as the man that Mr. Zavala identified in the photo lineup.  Officer Bartlett also testified that Mr.
Zavala was concerned that harm would come to him if Appellant found out that he
had given a statement.  Mr. Zavala did
not testify at trial.

An arrest warrant
was issued for Appellant on the same day Officer Bartlett took Mr. Zavala=s statement.  In February 1994, Officer Bartlett received a
tip that Appellant was in a gold-colored Mustang driving towards I-10 en route
to Juarez.  Officer Bartlett stopped the
vehicle and told Appellant he had an outstanding arrest for an aggravated
assault.  Appellant did not resist arrest
and told Officer Bartlett that Ahe
was tired of running and that he was glad he got caught.@  On cross-examination, Officer Bartlett agreed
that Appellant could have been referring to another charge.

Appellant
testified at trial.  He denied hitting
Mr. Lockett.  He admitted that he went to
the bar that night and saw his friends Oscar Minjarez and Saul Zavala, but he
has not had a drink since 1990.  He had
gone into the bar around 6:30 p.m. looking for his father who is a recovering
alcoholic and left right away.  He also
stated that no one broke his car windows and he did not see anyone run into the
bar screaming about broken windows.

In Issues One and
Two, Appellant contends his trial counsel rendered ineffective assistance.  Specifically, he asserts that his counsel was
ineffective by failing to object to hearsay testimony from Officer Bartlett and
was ineffective by failing to request a limiting instruction that Mr. Monreal=s prior inconsistent statement was to
be considered for impeachment purposes only.








Standard
of Review

We review claims
of ineffective assistance of counsel under the two-prong test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 
To prevail on an ineffective assistance claim, the appellant must show
by a preponderance of the evidence that counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88, 104
S.Ct. at 2064; Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App.
1999).  In addition, the appellant must
show that counsel=s
deficient performance prejudiced his defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson v.
State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the appellant to show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct.
at 2068; Jackson, 877 S.W.2d at 771.








In reviewing
claims of ineffective assistance, we must indulge a strong presumption that
counsel=s conduct
falls within the wide range of reasonable professional assistance and the
appellant must overcome the presumption that the challenged conduct might be
considered sound trial strategy.  Thompson,
9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this
presumption.  Thompson, 9 S.W.3d
at 813; see Jackson, 877 S.W.2d at 771. 
In the majority of instances, this task is extremely difficult because Athe record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel.@ 
Thompson, 9 S.W.3d at 813-14. 
When faced with a silent record as to counsel=s
strategy, this Court will not speculate as to the reasons for counsel=s actions.  See Jackson, 877 S.W.2d at 771.  The defendant bears the burden of proving
ineffective assistance by a preponderance of the evidence.  Thompson, 9 S.W.3d at 813.

In this case,
Appellant did not file a motion for new trial to challenge the alleged ineffectiveness
of his counsel.  The record before this
Court does not contain trial counsel=s
explanations of the reasons for his actions, therefore it will be difficult for
Appellant to rebut the strong presumption that trial counsel=s conduct falls within the wide range
of reasonable professional assistance.  See
Thompson, 9 S.W.3d at 814.

Failure
to Object to Hearsay Testimony

Appellant argues
that his trial counsel=s
representation was deficient because the record shows that his counsel knew he
should have objected to inadmissible hearsay statements by Saul Zavala, which
were admitted through the testimony of Officer Bartlett, but failed to do
so.  Appellant asserts that the
out-of-court statements were testimonial and inadmissible and violated his
Sixth Amendment right to confront and cross-examine a witness against him.  








Out-of-court
testimonial statements by a declarant who fails to testify at trial violate the
Sixth Amendment=s
Confrontation Clause unless the declarant is unavailable to testify and the
accused had a prior opportunity to cross-examine the declarant.  See Crawford v. Washington, 541 U.S.
36, 68, 124 S.Ct. 1354, 1373-74, 158 L.Ed.2d 177 (2004).  While the Supreme Court in Crawford
declined to provide a comprehensive definition of testimonial statements, the
Court listed several examples of testimonial statements, which included:  (1) material such as affidavits, custodial
examinations, or similar pretrial statements that declarants would reasonably
expect to be used prosecutorially; and (2) statements that were made under
circumstances which would lead an objective witness to believe that the
statement would be available for use at a later trial.  Crawford, 541 U.S. at 51-2, 124 S.Ct.
at 1364.  Mr. Zavala=s voluntary statement was taken by a
police officer in the course of investigating the aggravated assault.  As a result of the statement and the photo
lineup identification, Officer Bartlett issued an arrest warrant for
Appellant.  We conclude that Mr. Zavala=s out-of-court statements were
testimonial in nature and inadmissible hearsay under Crawford.

Appellant further
contends that his trial counsel knew he should have objected to the
testimony.  At trial, during
cross-examination of Appellant, his counsel objected to questions concerning
Mr. Zavala=s
statement and the following exchange occurred:

Defense:           Objection, Your Honor.  There=s
never been any Zavala here and we don=t
know about any statement ever given.

 

The
State:         There=s been testimony.

 

The
Court:        Would you approach the
bench.

 

(At the bench, on the
record.)

 

Defense:           Now he=s
compounding the hearsay testimony.

 

The
Court:        Mr. Rey, I think that Mr.
Bartlett testified about what Zavala said.

 

Defense:           Testified what?

 

The
Court:        Mr. Bartlett testified about
what Zavala said, although Zavala didn=t
show up.  Am I correct?

 

The
State:         Exactly, Your Honor.

 

Defense:           That=s
not evidence.

 








The
Court:        It is now.  All of that is before the Jury.  It was hearsay.  Yes, I agree.

 

Defense:           We objected.

 

The
Court:        No, you didn=t. 
So go ahead.

 

The
State:         Thank you.

 

Apparently, trial counsel believed
that he had lodged an objection to the inadmissible testimony.  The record before us, however, is otherwise
silent as to trial counsel=s
strategy, thus we are hesitant to speculate as to the reasons for lack of an
objection.  But assuming that Appellant
has met his burden under the first prong, he fails to show that his counsel=s deficient performance prejudiced his
defense, that is, that there is a reasonable probability that, but for the
error claimed, the result of the proceeding would have been different.  See Strickland, 466 U.S. at
694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771. 








In this case,
there was other evidence, excluding the hearsay testimony, from which the jury
could have found Appellant committed the charged offense.  Mr. Minjarez=s
testimony placed Appellant in the bar on the night of the assault.  Mr. Minjarez could not say for certain
whether or not Appellant was the one who had beaten Mr. Lockett.  Appellant=s
friend, Cesar Monreal, denied Appellant=s
involvement in the assault, but his testimony was impeached by his prior
inconsistent statement in which he identified Appellant as the assailant.  When Officer Bartlett later arrested
Appellant for aggravated assault, Appellant told the officer Ahe was tired of running and that he was
glad he got caught.@  Given the other evidence, we conclude that
Appellant has failed to show that a reasonable probability exists that a
different outcome would have resulted but for his counsel=s omission.  Thus, Appellant has failed to prove his
ineffective assistance of counsel claim by a preponderance of the evidence
based on this particular ground.

Failure
to Request a Limiting Instruction

Appellant next
asserts that his trial counsel was ineffective because he failed to request a
limiting instruction concerning Mr. Monreal=s
prior inconsistent statement.  At trial,
Mr. Monreal testified that he did not remember seeing Appellant come into the
bar.  Further, Mr. Monreal stated, AI had never met [Appellant] before
now.  I still don=t
know who he is.@  When the State questioned Appellant about his
previous statements to Investigator Perez and the state prosecutor, Appellant=s trial counsel objected and the State
asserted Aprior
inconsistent statement@
as the grounds for admissibility.  Mr.
Monreal admitted that he probably did tell the investigator and state
prosecutor that Appellant struck Mr. Lockett on the head with a tire jack in
the bar.  On cross-examination, however,
Mr. Monreal maintained that he did not recognize Appellant as the one carrying
the tire jack.

Under Rule 613(a)
of the Texas Rules of Evidence, a witness=s
prior inconsistent statement may be used to impeach the witness=s credibility.  See Tex.R.Evid.
613(a).  From the record, it is obvious
that the State offered the prior inconsistent statement only to impeach
Mr. Monreal=s earlier
testimony.  When it is apparent that
testimony is being used for impeachment purposes only, no limiting instruction
is necessary.  See Cantrell v. State,
731 S.W.2d 84, 95 (Tex.Crim.App. 1987). 
Because no limiting instruction was necessary, Appellant=s trial counsel was not ineffective on
this ground.  See Flowers v. State,
124 S.W.3d 801, 804 (Tex.App.--Houston [1st Dist.] 2003, pet. ref=d)(trial counsel was not ineffective
for failing to request a limiting instruction where testimony was clearly
offered for impeachment purposes only).








Moreover, even if
we were to agree with Appellant that in hindsight, trial counsel had good
reason for requesting a limiting instruction when Mr. Monreal=s prior inconsistent statement was
introduced, the record in this case is silent as to why trial counsel chose to
forego such a request.  Once again,
because we only have a silent record, we may not speculate as to the reasoning
and strategy that underlies trial counsel=s
actions.  See Jackson, 877 S.W.2d
at 771.  Thus, Appellant has failed to
rebut the strong presumption that trial counsel=s
conduct in this regard falls within the wide range of reasonable professional
assistance.  See Thompson, 9
S.W.3d at 814.  Issues One and Two are
overruled.

In Issue Three,
Appellant contends the evidence is legally and factually insufficient to
sustain his conviction because the evidence failed to prove the identity of the
perpetrator of the assault.  Although
Appellant claims to be challenging both the legal and factual insufficiency of
the evidence, he does not state the factual sufficiency standard of review and
provides no argument to support a factual insufficiency challenge.  Because Appellant has failed to provide any
citation to authorities or argument to support his factual insufficiency claim,
it has not been properly raised and he has waived the issue for appellate
review.  See Tex.R.App.P. 38.1(h); McDuff v.
State, 939 S.W.2d 607, 613 (Tex.Crim.App. 1997)(appellant who merely states
an incomplete standard of review and presents no argument in the brief has
waived his factual sufficiency claim by insufficient briefing).  Therefore, we will only consider Appellant=s legal sufficiency challenge on appeal.

Standard
of Review








In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979).  When conducting a legal sufficiency review,
we consider all the evidence in the record, both admissible and inadmissible
evidence.  Dewberry v. State, 4
S.W.3d 735, 740 (Tex.Crim.App. 1999).  We
do not resolve any conflict of fact, weigh any evidence, or evaluate the
credibility of any witnesses, as this was the function of the trier of
fact.  See Adelman v. State, 828
S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839,
843 (Tex.Crim.App. 1991).  Instead, our
duty is to determine whether if both the explicit and implicit findings of the
trier of fact are rational by viewing all the evidence admitted at trial in the
light most favorable to the verdict.  See
Adelman, 828 S.W.2d at 421-22.  In so
doing, any inconsistencies in the evidence are resolved in favor of the
verdict.  Matson, 819 S.W.2d at
843.

Aggravated
Assault

A person commits
the offense of assault if the person intentionally, knowingly, or recklessly
causes bodily injury to another.  See
Tex.Pen.Code Ann. ' 22.01(a)(1)(Vernon Supp.
2004-05).  Aggravated assault occurs if a
person commits assault as defined in Section 22.01 and the person uses or
exhibits a deadly weapon during the commission of the assault or causes serious
bodily injury to another.  See Tex.Pen.Code Ann. ' 22.02(a).  At trial, Appellant stipulated that the type
of tire jack used in the assault was a deadly weapon and that the victim
suffered serious bodily injuries as a result of the assault.  On appeal, Appellant challenges only the
sufficiency of the evidence to support the finding that he was the perpetrator
of the offense.  








The record shows
that Mr. Minjarez saw Appellant at the bar on the night of the assault.  However, he could not say for sure that
Appellant was the one who had beaten Mr. Lockett.  Through Officer Bartlett, the State
introduced evidence that Mr. Zavala identified Appellant as Mr. Lockett=s assailant.  When Officer Bartlett later arrested
Appellant for aggravated assault, Appellant told the officer Ahe was tired of running and that he was
glad he got caught.@  The jury could have reasonably inferred from
Appellant=s
admission of guilt along with the other evidence that he was the perpetrator of
the offense.  Viewing the evidence, both
admissible and inadmissible, in the light most favorable to the verdict, we
conclude that a rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. 
Therefore, the evidence was legally sufficient to sustain Appellant=s conviction of two counts of
aggravated assault.  Issue Three is
overruled.

We affirm the
trial court=s
judgment.

 

 

 

December
8, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
At trial, Appellant stipulated that Mr. Lockett received serious bodily injuries
as a result of the assault that occurred on October 12, 1993.  Appellant also stipulated that the tire jack
was used as a deadly weapon.  In
addition, Antonio Tabullo, an Investigator for the District Attorney=s Office and a former police officer,
testified that the type of tire jack used in the assault was a deadly weapon.