**Opinion filed February 9, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00066-CR
_____

### NORMAN LEE DUNN, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR20315**

## M E M O R A N D U M   O P I N I O N

A jury convicted Norman Lee Dunn of assault family violence–enhanced, as a repeat offender. TEX. PENAL CODE ANN. § 22.01 (West 2011), § 12.42 (West Supp. 2011). The trial court assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of eighteen years. Dunn appeals his conviction in one issue. We affirm.

In his sole issue on appeal, Dunn argues that the evidence was factually insufficient to support the verdict of the jury. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or as a factual sufficiency claim, under the standard of review set forth in

*Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The complaining witness, Clara Gil, testified that she lived in Brown County in the apartments across the street from the courthouse. At around 12:00 or 12:30 a.m. on June 19, 2009, Gil was outside her apartment smoking a cigarette when she saw her friend Andrew Bradshaw II stumbling to his car. She told him that he was in no condition to drive and that he could crash on her couch. After Bradshaw went to sleep on her couch, Gil went to sleep in the back bedroom. At about 2:00 a.m., Gil heard loud banging on the front door. She opened the door, and Dunn was there. Dunn came into the apartment and seemed upset about Bradshaw being on the couch. Bradshaw woke up, and Dunn asked him if it was okay if he talked to Gil. Bradshaw told Dunn he did not care because Gil was not his. He immediately went back to sleep.

Gil testified that Dunn pushed her to the back bedroom, asked her what was going on, and said, "Well, I see how it is." Dunn punched her in the face above her eye and took off. She "blanked out" and fell to the floor. When she got up, she began screaming. Bradshaw woke up again, grabbed a towel for Gil, and told her to put it on her face. Gil stated that there was blood everywhere and that she had to throw away her shirt.

Gil called 911 and told the police that her ex-boyfriend had hit her and that she needed an ambulance. Officer Fred Bastardo arrived about ten minutes later, and Gil told the officer what had happened. Gil reported that Dunn was the person responsible for her injuries. She gave Officer Bastardo a description of the clothing Dunn was wearing and told him that Dunn sometimes stayed with his father on Lillie Kimble Street. She testified that Dunn was wearing a white T-shirt that was on backwards and inside out and black shorts.

Gil identified Dunn in the courtroom as the man who attacked her and testified that she had known Dunn for approximately two or three weeks prior to the assault. During that time, they were in a dating relationship, and Dunn had stayed the night at her apartment about five times a week. Gil had ended the relationship with Dunn for several reasons. One of the reasons

she gave was that he got mad because she did not want him driving her car and threw her car keys up against a rock fence, which broke her remote key alarm. She also said she ended the relationship because Dunn was jealous of her other male friends.

The ambulance took Gil to the hospital, and she received seven stitches for her injuries. Two photos of her injuries, taken by Officer Anna Sturgeon, were offered and admitted into evidence.

During cross-examination, Gil testified that Dunn had never hit her before and that she was not afraid of him. She could not remember which hand he used to hit her because "it all happened so fast." Although she believed that Dunn had been drinking because he drank every day, she did not know for sure whether he had been drinking that day.

Bradshaw testified that he had been celebrating his birthday and was pretty intoxicated on the night of June 18 and early morning of June 19. He could not remember "too much of the incident that may have took place or anything." He testified that he stayed at Gil's apartment that night, but he could not remember whether he asked to crash on her couch or whether she offered. Bradshaw could not recall whether an argument occurred between Dunn and Gil, whether he provided Gil with a towel, whether he talked to the police that evening, or whether he went to the hospital to visit Gil. All he could recall was going to sleep and waking up the next day. Bradshaw saw Gil the next day, and she had stitches in her eyebrow. He did not remember those injuries on her face from the day before and agreed that she was probably injured during the night.

To Bradshaw's knowledge, Gil and Dunn were dating. Bradshaw did not recall him and Dunn ever having any difficulties about anything. There had been a misunderstanding during horseplay once, but no other incidents.

Officer Sturgeon testified that she was dispatched to 612 North Fisk, Gil's apartment, on June 19 for a domestic disturbance. When she made contact with Gil, Gil had an obvious wound over her left eye that was actively bleeding. Gil was also visibly shaken, crying, and obviously upset. It took Officer Sturgeon a couple of minutes to calm Gil down before she was able to speak with her. Officer Sturgeon testified that there were no indicators that Gil had been drinking. She did not find any blood on the floor.

Gil told Officer Sturgeon that her attacker was wearing a white T-shirt that was on backwards and black shorts. She also told Officer Sturgeon that the suspect fled on foot on

North Fisk. Officer Sturgeon gave the description and general location to Officer Bastardo, who was also dispatched and on the way to Gil's apartment. Within a few minutes, Officer Bastardo contacted Officer Sturgeon and told her that he had located the suspect on Lillie Kimble Street.

Officer Sturgeon learned that Bradshaw had stayed at Gil's apartment that night because he had become intoxicated at someone else's apartment. Gil told Officer Sturgeon that Bradshaw had asked Gil if he could sleep on her couch and that she agreed. Officer Sturgeon was not able to make contact with Bradshaw because he had left Gil's apartment before she got there. Gil informed Officer Sturgeon that Bradshaw had left because he had a possible warrant and was afraid to talk to the police.

An ambulance responded and took Gil to the hospital. Officer Sturgeon left the apartment and went to Lillie Kimble Street, where Officer Bastardo had apprehended Dunn. Dunn was wearing a white shirt that was on backwards and black shorts. He was covered in sweat like he had been running and appeared to be out of breath and a little agitated. There was no blood on his shirt and no marks on his hands, such as bruises or scratches. Two photographs of Dunn, depicting his appearance when Officer Sturgeon arrived, were offered and admitted into evidence.

Officer Sturgeon advised Dunn of his *Miranda*[1] warnings and asked him what had happened at Gil's apartment. Dunn said that he had not seen Gil that day. Officer Sturgeon testified that Dunn was not cooperative, that he did not want to answer her questions, and that it appeared he had been drinking. Based on the fact that Dunn matched the description given by Gil, that Dunn was in the proximate area at the same time of the assault, and that Gil had fresh injuries, Officer Sturgeon decided to arrest Dunn for assault family violence. Gil had also told Officer Sturgeon that she and Dunn were former boyfriend and girlfriend. Officer Sturgeon testified that it was possible that Gil could have sustained injuries by ways other than Dunn striking her in the face with his fist but that she did not have any other evidence to suggest that Gil was injured in some other manner.

Officer Bastardo testified that he was dispatched to Gil's apartment on June 19 for a domestic disturbance. On his way to the apartment, Officer Sturgeon radioed and informed him that the suspect was Dunn and that Dunn was wearing a white T-shirt turned around backwards and black shorts. Officer Bastardo knew Dunn from prior arrests and knew that, at one time,

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

4

Dunn lived with his father at 1002 Lillie Kimble. Officer Bastardo went there and saw Dunn coming up to the front of the residence. Officer Bastardo approached Dunn; he recognized Dunn from his past experience. He radioed Officer Sturgeon and told her that he had located Dunn. Officer Sturgeon told Officer Bastardo that Gil was being taken to the hospital and that she would be on her way to his location. When Officer Sturgeon got there, she asked Dunn about the assault, but Dunn denied that he had seen Gil that evening. Officer Bastardo testified that Dunn was cooperative with him because "that's the kind of relationship I have with Mr. Dunn."

Jay Curtis testified that he was Dunn's probation officer for a prior assault family violence conviction in which Dunn initially received twenty-four months probation, which was later revoked. The prior assault family violence conviction arose out of an assault in 2005 that Dunn committed against his girlfriend; she was pregnant with his child at the time. The judgment was admitted into evidence.

Ruby Williams, Director of Health Information Management at Brownwood Regional Medical Center, produced Gil's medical records from June 19, 2009. The medical records were admitted into evidence. Williams did not have any independent information of how the injury to Gil occurred.

Dunn testified that he went to Gil's apartment on June 19 because he and Gil were in a relationship together. He stated that he had been at her apartment earlier in the day but had left to go to a friend's house for a while. Gil told him that he could come back whenever he wanted. He arrived back at the apartment between 1:00 and 1:30 a.m. and knocked on the door twice. Gil let him in the apartment. When Dunn walked in, he looked over and saw Bradshaw and asked, "What is he doing here?" Bradshaw and Gil had dated prior to Dunn and Gil dating. Dunn told Gil that Bradshaw should not be over there. He told Gil that they needed to talk, and they went to the back bedroom to talk for a minute. Dunn told her that he was going to tell Bradshaw to leave. Gil grabbed him by the arm and told him, "No, you're not." He snatched away from her, walked back to the living room, and told Bradshaw, "You know what, Man, you can have this." Bradshaw was lying on the couch drunk. Dunn left the apartment and then walked pretty fast to his father's house because he was upset. He did not run.

Dunn testified that, although he does drink, he had not been drinking that day. He stated that he did not hit Gil that night and that he had never raised his hand at Gil in the past. When he snatched away from her, she stumbled a little bit, but Dunn did not see what happened to her

after that. Dunn said he told the police that he had not seen Gil all day because he thought that Officer Sturgeon was talking about during the day, not that night. He stated that he never told the police he had been at Gil's apartment or that he had pulled away from Gil and walked home upset. Dunn later wrote a letter to Gil apologizing for the way he acted that night.

Dunn testified that he pleaded guilty to aggravated assault with a deadly weapon and served time in the penitentiary. He acknowledged his 2005 conviction for assault family violence. Dunn also admitted that he had been convicted of theft.

Although Gil and Dunn told different versions of the incident and Bradshaw could not remember the incident, the trier of fact may accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found the elements of assault family violence–enhanced beyond a reasonable doubt. We overrule Dunn's sole issue.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


February 9, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.