**Opinion filed November 20, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00336-CR

_____

## JACKIE URIAH SLATE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR39498**

### MEMORANDUM OPINION

The jury convicted Jackie Uriah Slate of theft of over $1,500 but less than $20,000. *See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2014). After finding the two enhancement paragraphs true, the trial court assessed Appellant's punishment at confinement for a term of twelve years and sentenced him accordingly. On appeal, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

We review the sufficiency of the evidence, whether denominated as a legal or as a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The grand jury indicted Appellant for unlawfully acquiring and exercising control over cash in an amount between $1,500 and $20,000. The jury charge permitted the jury to find Appellant guilty of committing the theft as the principal actor or as a party. A person can be held criminally responsible as a party to an offense, even when the person does not commit the actual offense, if the person is criminally responsible for the act of another. *See* TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, with the intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

The evidence at trial showed that Rachel Givens, the general manager of a Stripes Convenience Store in Odessa, discovered that approximately $7,000 was missing from the safe when she arrived at work on the morning of November 6, 2011. At the time, she was a temporary manager for the Stripes store located at the Garden City exit in Midland County. The missing $7,000 included a change order for the weekend, a large amount of quarters, and all but one of the money drops

made by employees that day. Givens also discovered that the recording system for the security cameras had been removed from the office and was missing.

Givens testified that James Emmitt Wilson was the only person who worked the night before. Appellant had previously worked at that store as an assistant manager but had transferred to another store because he and Wilson were in a romantic relationship. Givens explained that Appellant would have had keys to the office and the safe when he was an assistant manager. She did not know whether Appellant still had keys or whether he turned them in when he transferred. Givens said that part of the reason Appellant was transferred was because he was showing Wilson how to open the safe and how to perform other managerial duties. Givens also explained that the door to the office was easy to open even if you did not have a key to the office because you could "jimmy" the lock. When she arrived that morning, it looked like someone had opened the door by removing some screws from a small piece of wood near the strike plate. The wood had been placed on the doorframe in an attempt to prevent people from being able to "jimmy" the lock.

Officer Marcus Dominguez of the Midland Police Department investigated the theft. Officer Dominguez, Sergeant David Joseph Scardino, and Detective Georvarsey Mitchell determined a possible address for Appellant and went to that location. Appellant and Wilson lived at the residence, along with Appellant's mother. The officers were given permission to enter the residence, and they talked with Appellant and Wilson about the theft. Appellant told Officer Dominguez that he took the security recording system at 10:30 p.m. the night before and threw it out of his car window on Rankin Highway.

Sergeant Scardino testified that Appellant gave them consent to search the residence. Appellant led them to a dresser in his and Wilson's bedroom from which Appellant removed a large bag of quarters. Sergeant Scardino took Appellant to the location where Appellant thought he threw out the recording

3

device, but they could not find the device. The officers also never found the cash that was taken from the safe.

Detective Mitchell testified that $7,347 was initially missing from the safe. The quarters that were recovered from Appellant were worth $390. Once the final tally was completed, the officers determined that $6,957 was still missing from the safe. Appellant gave a recorded statement to Detective Mitchell in which he said that Wilson wanted him to take the surveillance system from the office so that Wilson could get some money from the safe. Appellant said that he got a key to the office from near the cash register. He took the surveillance system out of the office at approximately 11:00 or 11:30 p.m. Wilson gave him the quarters around 11:45 p.m., and Appellant left the store. He threw the surveillance system out of the car as he was driving and took the quarters home. Appellant put the quarters in their bedroom. He did not know where Wilson put the cash. Appellant explained that Wilson hid the cash from him because Wilson said Appellant was not good at paying bills.

Wilson, who was also facing charges for the theft, testified for the defense. Wilson testified that he was the only person working from the night of the 5th to the morning of the 6th. His scheduled shift was from 10:00 p.m. until 6:00 a.m. Appellant drove him to work, and when they arrived at the store, Appellant went in and used the bathroom. According to Wilson, Appellant left the store shortly after they arrived; he was gone by 11:00 p.m. at the latest. He did not have anything with him when he left the store. Wilson said that it would have been impossible for Appellant to have taken the security system because Wilson would have seen him with it, and he did not. Appellant came back to get him when his shift was over; Appellant did not get out of the car.

Wilson explained that a manager or an assistant was supposed to come close out the day and count the money between 3:00 a.m. and 4:00 a.m. each morning.

4

Givens was supposed to have done it on this particular day, but she never showed up while Wilson was at work. Wilson testified that the safe was under the register and that he did not have a key to the safe or to the office. He also testified that he was sure that Appellant did not have a key. Wilson did not open the door to the office that night. He did not "jimmy" the lock or remove any screws, and he did not see anyone else do any of those things. After looking at pictures of the office door, Wilson did not believe that someone could have removed the screws from the door without opening the door first. Wilson further testified that, although he knew how to get in the safe because he had closed the store in the past with another manager, he did not open the safe that night and that he did not take the money or the security system. The last person that would have opened the safe would have been Givens. Regarding the quarters, Wilson explained that he took them home months before this incident because they were extra from a change order that he had received from the bank.

Maura G. McAllister and Carolyn Choice also testified for the defense. Both individuals were employees of the Stripes store in question. McAllister testified that she worked at the Subway inside of Stripes and did not see Appellant at Stripes that night; she did not leave Stripes until around 11:30 p.m. Choice testified that she relieved Wilson on the morning of the 6th. When she arrived at work that morning, she saw Appellant sitting in his car. She did not see him go into the store. Choice said that Wilson left with Appellant and that Wilson was not acting unusually.

Appellant challenges the sufficiency of the evidence on several grounds. First, Appellant contends that the State failed to show the "causal link necessary to establish that Appellant was the primary actor in the theft." Appellant also argues that, although he admitted to stealing the security system, the State did not establish the value of the security system. In addition, Appellant asserts that the

5

State failed to establish the exact amount of money taken, who had taken the money, and when it was taken. And finally, Appellant contends that the State failed to show that he was responsible for the theft as a party because the State did not link someone else to the theft.

Appellant is correct in that the State did not establish the value of the security system. However, the State did not rely on the theft of the security system to prove that Appellant committed theft of over $1,500 but less than $20,000. The State did establish the amount of money taken. Detective Mitchell testified that, after recovering the stolen quarters, the amount of money missing from the safe was $6,957. Givens testified that approximately $7,000 was missing from the safe and that the amount missing included all of the drops, except for Wilson's drop, from all the other employees that had worked since the previous morning when she went in to close out the day. Thus, Givens's testimony established that the theft occurred sometime on the night of the 5th or the early morning hours of the 6th.

The State also presented evidence to show who took the money—Appellant and Wilson. The State linked Appellant and Wilson to the theft through the testimony of the officers who recovered the stolen quarters from the residence where Appellant and Wilson resided together and through Appellant's confession in which he told the officers about his and Wilson's involvement in the theft.

Although Wilson denied that he and Appellant stole money from the safe and although Wilson explained that he had taken the quarters home months prior to this incident, the jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). In addition, the jury was entitled to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at

6

319. Here, the jury could have reasonably concluded that Appellant assisted Wilson in the commission of the offense by removing the security system so that the theft would not be recorded and by taking the quarters from the store to his and Wilson's home. The jury also could have reasonably inferred that Wilson took the $6,957 in cash at the same time that he took the quarters. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant committed the offense of theft under the law of parties. Because we have found the evidence sufficient to support the conviction under the law of parties, it is not necessary for us to determine whether the evidence is also sufficient to support Appellant's conviction of theft as the principal actor. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("[W]hen the trial court's charge authorizes the jury to convict on more than one theory, . . . the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories."). We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


November 20, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.