Opinion filed August 13, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00234-CR

_____

## DIANA SOLIS RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10395-D**

## MEMORANDUM OPINION

The jury convicted Diana Solis Rodriguez of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). The trial court found that Appellant used or exhibited a deadly weapon during the commission of the offense, or during immediate flight therefrom, and assessed Appellant's punishment at confinement for

a term of five years. In her sole issue on appeal, Appellant challenges the sufficiency of the evidence to support her conviction. We affirm.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Appellant argues that the evidence was insufficient to support her conviction for aggravated robbery because there was insufficient evidence that she used and exhibited a deadly weapon—a knife—and, thereby, threatened and placed the victim in fear of imminent bodily injury or death. Specifically, Appellant argues that the evidence did not show that the victim was in fear or, even if he was in fear, that the fear was reasonable in light of Appellant's conduct.

The grand jury indicted Appellant, in two counts, for aggravated robbery and for the lesser included offense of robbery. Both counts were in relation to the same incident. As to the aggravated robbery charge, the indictment alleged that Appellant, "while in the course of committing theft of property and with intent to obtain and maintain control of said property, used and exhibited a deadly weapon" and "intentionally and knowingly threaten[ed] and place[d] RICHARD DEAN FLANDER in fear of imminent bodily injury and death by the use of said deadly weapon." A person commits robbery when, in the course of committing theft and with the intent to maintain control of the property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

PENAL § 29.02(a)(2). "In the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). One of the ways in which a person can commit aggravated robbery is when the person commits robbery and also uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2). A "[d]eadly weapon" is "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17) (West Supp. 2014).

Flanders[1] testified that he and his wife operated South 14th Discount Market in Abilene. On the morning of the incident, Flanders was operating the store by himself. Appellant and Appellant's daughter entered the store and bought "two pair of contacts." After purchasing the contacts, Appellant's daughter left the store, and Appellant stopped to look at some coin purses. Appellant did not purchase a coin purse but left the store with one. She was holding the coin purse between her person and her wallet. Flanders called out to her and went after her, but Appellant would not stop.

Flanders followed Appellant out of the store and saw Appellant put the coin purse in her jacket pocket. Once Flanders caught up to Appellant, he told her that he saw what she had done, and he took the coin purse out of her pocket. Flanders told her that he was going to call the police and that she needed to come back inside the store. She would not do so and backed away from Flanders. Flanders held her by her wrist and tried to get her to come back inside, but she kept dragging him closer to the car. Appellant then pulled out a knife and said, "Don't let me cut you

---

[1]Although the victim is named in the indictment as Richard Dean Flander, he states that his name is Richard Flanders, and the parties refer to him as Richard Flanders; therefore, we will call him Flanders throughout the opinion.

with this." Flanders immediately backed away and yelled, "She's got a knife." Appellant got in the car with her daughter, who drove away.

Flanders did not see where the knife came from, nor did he see Appellant holding the knife until she brought it to his attention. Once he did see the knife, he could only see the blade. He said it was a small knife. He also testified that Appellant made a threat toward him, that he was a nervous wreck, and that it took a while for his heart to calm down. Flanders explained, "Her actions displayed to me she was threatening me with the knife" and "[t]hat if I did not let her go, that she was going to cut me with the knife." He further explained that she did not cut him; she threatened him. Flanders also testified that he did not know how his grabbing her would have been painful, and he did not know whether it left bruising.

Robert Dail testified that he saw Flanders try to stop Appellant outside the discount store on the morning in question. The female had something in her hand, but Dail could not tell exactly what it was. Dail saw Flanders jump back and heard him say, "She's got a knife; she's trying to cut me."

Officer Lance Vines of the Abilene Police Department testified that he located Appellant and searched her for weapons. He found a knife in her purse. Appellant admitted that the knife was hers but told Officer Vines that it was broken and did not work. Officer Vines inspected the knife and concluded that, although it had a malfunction, it would still be capable of cutting someone and, thus, capable of causing death or serious bodily injury. Deputy Crystal Perez, who was a deputy jailer at the detention center at the time of this incident, recovered another knife when she searched Appellant during booking. Deputy Perez found the knife inside one of Appellant's socks; it was between the sock and the bottom of Appellant's foot. This knife was not broken and was also capable of causing serious bodily injury or death.

4

Appellant testified that, after she bought contact lenses at the discount store, she started looking at several different purses. She decided not to purchase any of the purses and left the store. Flanders came out and started accusing her of taking a wallet. She did not know what he was talking about and told him that the only wallet she had was her own. Flanders continued to accuse her; she kept walking to the car. Appellant testified that Flanders grabbed her by her wrists and her arms and that she tried to get away. She saw Flanders holding a wallet in his hand. Appellant continued to struggle with Flanders and eventually started to hit him with the handle of her knife; the knife was not open. Appellant felt threatened and felt that Flanders was being too rough with her. Several pictures that depicted bruises and scratches on Appellant's arms were admitted into evidence.

The jury was instructed on the defensive issue of self-defense. Appellant does not expressly complain about the sufficiency of the evidence as it relates to self-defense. Appellant's complaint on appeal is that the evidence was insufficient to show that she used and exhibited a deadly weapon to threaten Flanders and place him in fear of imminent bodily injury or death. Flanders testified that Appellant threatened him with a knife and that he believed that, if he did not let her go, she would cut him with the knife. He also testified that he was a nervous wreck and that it took a while for his heart to calm down. The officers testified that both of the knives that they found in Appellant's possession were capable of causing serious bodily injury or death.

Although Appellant testified that she did not take the coin purse from the store and that she used the knife in self-defense because she was in fear of Flanders, the jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418,

421 (Tex. Crim. App. 1992). In addition, the jury was entitled to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. Here, the jury could have reasonably concluded that Appellant intentionally or knowingly threatened Flanders or placed Flanders in fear of imminent bodily injury when she pulled out a knife and said, "Don't let me cut you with this." We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally or knowingly threatened Flanders with imminent bodily injury while using or exhibiting a deadly weapon in the course of committing theft of property. We also hold that a rational trier of fact could have rejected Appellant's testimony and found against her on her claim of self-defense. Appellant's sole issue on appeal is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


August 13, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.